Trico Community Unit School District No. 176, Perry, Randolph and Jackson Counties, Illinois; Herman Wedemeyer and John Meyerhoff, Plaintiffs-Appellants, v. County Board of School Trustees of Randolph County, Illinois, and Steeleville Community Unit School District No. 138, Randolph County, Illinois, Defendants-Appellees.

Term No. 55–O–27.

Fourth District.

February 1, 1956.

Released for publication February 23, 1956.

House & House, of Nashville, for plaintiffs-appel-
ants.

Walter J. Schuwerk, of Evansville, for defendant-
appellee.

JUSTICE CULBERTSON delivered the opinion of
the court.

This case comes to us for decision by transfer from
the Supreme Court. The proceedings below were ini-
tiated and prosecuted under one of several methods
provided for by Section 4B—2 of the School Code
(Illinois Revised Statutes, 1953, Chapter 122, Para-
graph 4B—2 [Jones Ill. Stats. Ann. 123.754B(2)]).
Two-thirds of the legal voters residing in three sepa-
rate and distinct territories lying within Trico Com-
munity Unit School District No. 176, referred to in the
record as the North, South and Shiloh territories, filed
petitions with the Randolph County Board of School
Trustees requesting the detachment of said territories
from the Trico District and their annexation to Steele-
ville Community Unit School District No. 138. In each
instance, after a public hearing, the board granted the
prayer of the petitions and upon administrative review
in the Circuit Court of Randolph County, where the
causes were consolidated by stipulation, its decisions
were affirmed. The Trico District and certain of its

residents have filed a consolidated appeal for a review of the order of the Circuit Court. It is contended here as it was contended below, and assigned as the sole error for our consideration, that the decisions of the Board are against the manifest weight of the evidence.

Before proceeding to a recital and consideration of the evidence there are significant provisions of article 4B of the School Code (1953 Illinois Revised Statutes, Chapter 122, Paragraphs 4B—1 to 4B—26 [Jones Ill. Stats. Ann. 123.754B(1)—123.754B(26)]), relating to changes in boundaries of existing school districts, which should be noted. Section 4B—2 provides that the detachment from and annexation to an existing school district may be accomplished by the appropriate county board of school trustees when petitioned: (1) by the boards of each district affected; (2) by two-thirds of the legal voters residing in each district affected; and, (3) by two-thirds of the legal voters residing in any territory to be detached from one or more districts. It is the method last mentioned, which alone permits the action to be initiated by persons representing less than the whole of the districts affected, that was employed in this case. Section 4B—4 of the same article provides for a public hearing on such petitions and the taking of evidence for the purpose of determining whether or not it is for the best interest of the schools of the area and the educational welfare of their pupils that the proposed changes in boundaries be granted. To aid the trustees in their determination, the section provides that they shall hear evidence concerning the school needs and conditions both of the affected and surrounding territories and as to the ability of the affected districts to meet the standards of recognition as prescribed by the Superintendent of Public Instruction. Further guides for the board are, that they shall take into consideration the division of funds and assets which will result from the change in boundaries re-

quested, and shall determine whether it is to the best interests of the schools of the area and the welfare of the pupils that such change be granted.

██ It may be seen from the provisions discussed that although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries. The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole. To this end, therefore, the Courts, upon administrative review, have a duty to consider the record to see if the findings and decision of the administrative agency are supported by the evidence. If not, it is their further duty to set the decision aside (Secaur v. Illinois State Civil Service Commission, 408 Ill. 197; Harrison v. Civil Service Commission of Chicago, 1 Ill.2d 137).

In order to better understand the factual problem at hand it may be well to review the organizational history of the Trico and Steeleville Districts. Trico was first organized in 1948 as a consolidated high school district for the communities of Ava, Campbell Hill, Willisville, Percy, and Cutler. Bonds were issued and a single high school plant, constructed to accommodate the projected attendance for the entire area, was built at approximately the geographical center of the district. At that time however, no attempt was made to consolidate the elementary schools which were operating at each of the above-mentioned communities and at other points within this district. It was not until August, 1953, that the present Trico Unit District, having jurisdiction over both elementary and secondary schools, was formed. On this date, however,

there was no definite plan for the centralization of the elementary school plants. Steeleville, on the other hand, was first organized as an elementary district to service the village of Steeleville and the surrounding area. Although a centralized elementary school plant was established, the area retained its nonhigh status until the formation of the present unit district in the spring of 1953. At that time steps were immediately taken to operate centralized elementary and high school units at Steeleville.

The territories with which we are concerned in this proceeding are located on the extreme west side of the Trico District and immediately adjoining the Steeleville area. Together they contain a total of seven sections of land with an assessed valuation of $330,000. The North territory, with eleven voters residing therein and comprising approximately one-third of the above-stated area and valuation, is located almost equidistant between Steeleville and Percy. One mile to the south lies the Shiloh territory, the largest of the three, which, in addition to having a total of 62 registered voters, contains almost two-thirds of the total area and valuation affected. Located three-eighths of a mile further south is the South territory, which consists of only one farm and one family.

At the public hearing conducted by the board it was established that some of the territory proposed to be detached was closer to the Steeleville schools, that the courses of study in Trico and Steeleville were identical, that Steeleville has remodeled one school and has built a new grade school building, that it has adequate bus service for all students, including parochial, and that the residents of the disputed territory did most of their trading, selling of produce and banking in Steeleville. Certain residents of the affected areas also advanced their reasons for favoring the change. Some thought that the bus service provided by Steeleville was supe-

rior to that of Trico and would, in at least one case, relieve a child of walking one and one-half miles to catch a bus. Others pointed out that the elementary school at Percy, a Trico unit, unlike the elementary school at Steeleville, did not have a definite hot-lunch program in operation. The same witnesses also expressed the sentiment that their children had friends, and would be happier at Steeleville. The majority of the persons testifying, however, gave as their primary reason, the fact that their children were attending an elementary parochial school in Steeleville. They felt, not only that it would be better for their children, upon graduation from the parochial school, to go directly into Steeleville High School along with their classmates, but also that the annexing district would furnish free bus transportation for these parochial students.

▉ When such evidence is measured by the statutory standards, we find it insufficient to support the decision of the board. Apart from the personal and general reasons advanced by the witnesses, the record shows that the Steeleville Unit District was organized only a few months before the petitions herein were filed. At that time, its present area and revenue must have been considered sufficient to fulfill the purposes desired. Since there is no evidence of adverse conditions arising since that date, it must be concluded that the added income and area which would be provided by the proposed annexation, although welcome, is not needed by the annexing district. Neither is such a change necessary for the educational welfare of the children residing in the affected territories. The petitioners do not seriously contend that the curriculum and educational opportunities offered by either district is superior to that of the other. Rather, they urge such action primarily for the sake of personal preference and convenience. It may well be that certain of the

children, if allowed to choose, would prefer the Steeleville District. Unfortunately however, in our modern system of education with its complicated revenue and transportation problems, such choice is not always possible. If it were, the well-planned procedure for the establishment and stability of school boundaries would be for naught. The record does disclose that if the annexation were approved, the residents of these territories would be allowed to send their children, free of charge, by Steeleville busses to the parochial school. Since the Steeleville District has for some time transported these children on a fee basis, the benefit to be gained is therefore limited to the fare involved. Furthermore, the record discloses that a parochial school of the same denomination operates at Campbell Hill, in the Trico District, and that many of these children would be transported to this school by Trico, free of charge, if they so desired.

The petitioners also contend that Trico does not have an adequate transportation service, a centralized elementary school plant, and a hot-lunch program at all its schools. It must be remembered, however, that the Trico Unit District was organized and its Board of Education elected only a few days before the initiation of the present action, and that prior to that time it had no jurisdiction whatsoever over the elementary schools of the area. Also, it will be noted that many of the children residing in the three territories are now of pre-school age and that various witnesses, in voicing their preference for the Steeleville District, were concerned, not so much with the problems as they now exist, but rather with the conditions that they may expect when their children reach the elementary age. Since it is only reasonable to assume that these problems which resulted from the smaller elementary districts will now largely be eliminated by the formation of the present unit district, it can hardly be said that

the proposed annexation will materially benefit either the annexing or affected areas.

On the other hand, such action would not only reduce the size and revenue of the Trico District, but it would also be detrimental in other respects. For the present, Trico had planned to continue operation of the elementary schools located at Shiloh and at other points within the district. However, the Shiloh school buildings are located within the area to be detached. If the proposed annexation is approved, the students of this community remaining in the Trico District will be forced to attend the elementary school located at Campbell Hill. According to testimony offered at the board hearing, this in turn would involve not only an added transportation problem but would also cause an overcrowding of the latter school. Furthermore, the careful planning which preceded the location and construction of the present Trico high school plant would be materially frustrated by such action.

For these reasons, it is our opinion that the findings of the County Board of School Trustees were against the manifest weight of the evidence and that the lower court erred in affirming this decision. The judgment of the Circuit Court of Randolph County is, therefore, reversed.

Judgment reversed.

BARDENS, P. J. and SCHEINEMAN, J., concur.