Community Unit School District No. 6 of Macon and Christian Counties, Illinois et al., Plaintiffs-Appellants, v. County Board of School Trustees of Sangamon County, Illinois et al., Defendants-Appellees.

Gen. No. 10,053.

Third District.
February 23, 1956.
Rehearing denied March 19, 1956.
Released for publication March 19, 1956.

Sorling, Catron & Hardin, of Springfield, and Monroe and McGaughey, of Decatur, for appellants.

R. W. Deffenbaugh, of Springfield, for certain defendants-appellees; George P. Coutrakon, State's Attorney of Sangamon County, and Thomas W. Hoopes, both of Springfield, for County Board of School Trustees of Sangamon County, defendant-appellee.

PRESIDING JUSTICE HIBBS delivered the opinion of the court.

A petition was filed by more than two-thirds of the voters of a territory comprising approximately four and one-third sections of land located within Unit School District No. 6 of Macon and Christian Counties, hereinafter referred to as District No. 6, requesting the detachment of such from District No. 6 and the annexation of the same to Community Unit School District No. 12 of Sangamon and Macon Counties, hereinafter referred to as District No. 12, pursuant to the provisions of article 4B of the School Code (Ill. Rev. Stat. 1953, chap. 122, pars. 4B—1 et seq.).

A previous petition for detachment and annexation attempted to include this territory but failed to include it because of an incomplete description. After timely notice, a hearing was conducted by the County Board of School Trustees of Sangamon County, hereinafter referred to as the "Trustees," which resulted in a decision granting the petition to so detach and annex.

District No. 6 and certain individual residents thereof filed a complaint for a review of such administrative decision under the provisions of the Administrative Review Act (Ill. Rev. Stat. 1953, chap. 110, par. 264 et seq.). After a hearing thereon the Circuit Court entered an order affirming the action of the Trustees.

The appellants, being District No. 6 and others appealed directly to the Supreme Court of this State contending, first, that the Trustees' decision was contrary to the manifest weight of the evidence, and second, that article 4B of the School Code was unconstitutional in that it was indefinite and unlawfully delegated legislative powers. While this cause was pending in that court, it determined the question of the constitutionality of section 4B of the School Code in School Dist. No. 79 v. County Board School Trustees of Lake County, 4 Ill.2d 533, and there held that section 4B was constitutional and provided sufficient standards for the exercise of administrative discretion to render the delegation of power immune from constitutional attack. Thereafter the Supreme Court transferred this case to this court for decision. (6 Ill.2d 320.)

The only question before this court for determination is whether the action of such Trustees pursuant to the statute was contrary to the manifest weight of the evidence.

■ Article 4B–5 of the School Code (Ill. Rev. Stat. 1953, chap. 122, par. 4B—5) provides for the review of decisions of County Boards of School Trustees in accordance with the provisions of the Administrative Review Act. Section 11 of the latter Act (Ill. Rev. Stat. 1953, chap. 110, par. 274) directs that every action to review such a decision by the courts shall extend to all questions of law and fact presented by the record made by the administrative agency (in this case the Trustees) and the findings and conclusions

119

of such agency shall be held to be prima facie true and correct. These provisions for review have been construed to mean that the courts do not have the power to conduct a hearing de novo, nor to reweigh the evidence, but have only the duty to review the record to see whether the findings and decision of the administrative agency are supported by competent evidence. (Harrison v. Civil Service Commission of Chicago, 1 Ill.2d 137; Stricklin v. Annunzio, 413 Ill. 324; Secaur v. Illinois State Civil Service Commission, 408 Ill. 197.)

The School Code sets up two separate and distinct types of standards for the Trustees, one a mandatory statement of conditions requisite to the granting of any petition and the other a guide to the exercise of administrative discretion. Section 4B-3 of the School Code (Ill. Rev. Stat. 1953, chap. 122, par. 4B—3) provides that no petition for annexation or detachment under the Act shall be granted if any of the following conditions exist:

(a) If there will be any nonhigh school territory resulting from the granting of the petition.

(b) Unless after granting the petition any community unit district or high school district created shall have a population of at least 2,000 and an equalized assessed valuation of at least $6,000,000 based upon the last full, fair cash value as equalized by the Department of Revenue as of the date of filing of the petition.

(c) Unless the territory within any district so created and any district whose boundaries are affected by the granting of such petition shall after the granting thereof be compact and contiguous except as provided in Section 4B—4 of this Act.

(d) To create any school district with a population of less than 2,000 unless the Superintendent of Public Instruction and the County Superintendent of Schools of each county in which the proposed district

120

will lie shall certify to the county board or boards of school trustees that the creation of such new district will not interfere with the ultimate reorganization of the territory of such proposed district as a part of a district having a population of 2,000 or more.

Both Districts here involved have high school and elementary school facilities serving their entire territory; both after the detachment in question would have a population of over 2,000 and an assessed valuation of well over $6,000,000 and would be compact and contiguous. There is no dispute in the evidence and no question raised in this appeal as to their fulfillment.

The standards for the exercise of administrative discretion, set up in Section 4B–4 of the School Code provide that: "The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils" that such change be granted.

In School Dist. No. 79 v. County Board School Trustees of Lake County, 4 Ill.2d 533, the court had under consideration the construction of Section 4B–4 and there said at page 537: "It is to be admitted that these standards are general rather than specific in nature. However, it would be both impossible and undesirable for the legislature to draft rigid nondiscretionary standards which would embrace each and every school district boundary change, for conditions surrounding the changes are seldom the same."

This brings us to a review of the record in the light of the standards set up by the legislature for the only purpose of deciding whether the findings and decision

of the Trustees are against the manifest weight of the evidence. (Local Union No. 222, Oil Workers' International Union v. Gordon, 406 Ill. 145.)

The territory in question is a long, narrow, irregular strip along the west boundary line of District No. 6 with an assessed valuation of substantially $700,000. The twelve students residing therein are equally distant from the school maintained by each of the Districts, although there was some testimony that the distance would be greater to the new school proposed by District No. 6. The territory here involved together with several others adjacent thereto at one time belonged to District No. 12, but was thereafter added to District No. 6 in 1948. Later most of the territories, other than the one here involved, were reannexed to District No. 12 by a petition that failed to include this territory because of an error in description.

District No. 12 does not appear to have any financial difficulties. It maintains kindergarten and lunch facilities, in its buildings has inside drinking and toilet facilities, needs no additional administrative personnel, has adequate facilities for homemaking, science, business education, social studies and physical education, and its recognition by the State Superintendent has not been questioned.

District No. 6 has less adequate facilities. Some of its buildings lack kitchens and indoor toilets. It does not offer industrial arts or homemaking and has inadequate equipment in science, business education and social studies. While the Superintendent of Public Instruction has signed a report indicating an inadequacy of facilities the evidence shows that the Superintendent of School District No. 6 believes that they were given full recognition. The evidence also shows an acute problem of elementary housing.

The evidence further shows that District No. 6 has an equalized assessed valuation of $12,070,625; it is educating 596 students in four elementary schools and

122

one high school and has an assessed valuation of $20,252 per student. District No. 12 has an equalized assessed valuation of $9,067,385, educates between 310 and 362 in two schools with an assessed valuation of between $25,000 and $29,250 per student depending upon the enrollment figure used. The territory in dispute has an approximate assessed valuation of $700,000 and at the time of filing of the petition contained twelve children who had reached school age.

Both Districts have the maximum educational fund rate of $1 without referendum. Neither have sought to obtain a referendum to permit a rate of up to $1.775. District No. 6 levies a maximum of $0.25 for building fund while District No. 12 levies only $0.065. Although District No. 6 is under financial stress, it has failed to increase its tax rate by referendum. On two occasions bond issue referendums which were submitted for a new school in the eastern part of District No. 6 were defeated by voters in the western part of the District where the disputed territory is located. The evidence as to the actual loss of revenue to District No. 6 as a result of the proposed detachment is in conflict. Such District claims an annual loss of $8,750, while other credible evidence, including the testimony of the County Superintendent of Schools of Sangamon County, shows a possible annual income cut of only $4,375.

The evidence further shows that due to the erection of certain industrial plants especially one by the Caterpilar Company, near the City of Decatur and just east of the eastern boundary line of District No. 6, there is a considerable residential development in the eastern part of that District, which no doubt induced the submission of a proposition to build a new school house in that vicinity, which was defeated on two occasions by vote of the people.

. The foregoing statement shows clearly that the Trustees have heard evidence as to the school's needs and conditions and the ability of the respective Dis-

123

tricts to meet the standards of recognition prescribed by the Superintendent of Public Instruction and considered the division of funds and assets which would result from a change of boundaries together with other evidence as to local conditions. These hearings were held after due notice had been given and at the conclusion thereof the Trustees found, "The granting of said petition will not cause the districts affected to be unable to meet the standards of recognition as prescribed by the Superintendent of Public Instruction;" and "That the prayer of said petition should be granted because it appears that it will be to the best interests of the schools and the educational welfare of the pupils." It also found that, upon detachment, the educational opportunities of the pupils residing in the area included in the petition would be greater.

■ The courts have heretofore stated that they will not overturn an administrative decision unless manifestly against the weight of the evidence, but will reverse only if the findings and decision are not supported by the evidence in the record. (Brown Shoe Co. v. Gordon, 405 Ill. 384; Drezner v. Civil Service Commission, 398 Ill. 219; Community Consol. School Dist. No. 201 of La Salle County, Ill. v. County Board of School Trustees of La Salle County, Ill., 7 Ill.App.2d 98.)

■ This rule as to administrative decisions is especially salutary when applied to detachment and annexation petitions. Every such petition may raise problems local in nature and quite often not susceptible of definite proof. School districts are mere creatures of legislative acts and it is vested with complete power to determine the bounded areas of school districts. (People ex rel. McLain v. Gardner, 408 Ill. 228; People v. Deatherage, 401 Ill. 25.) It has attempted various solutions of the practical and often disturbing problems involved. It has previously given the township

trustees power to lay out school districts. (Metz v. Anderson, 23 Ill. 463.) Later power was given to an ex-officio board to allow or deny petitions for boundary changes. (Milstead v. Boone, 301 Ill. 213.) Subsequently such power was vested in the County Superintendent of Schools and then in the county judge. (People ex rel. Dolan v. Dusher, 411 Ill. 535; Board of Education of Waverly Community Unit School Dist. No. 6 v. Nickell, 410 Ill. 98.) Later discretion over school boundary matters was vested in the county board of school trustees. People v. Deatherage, 401 Ill. 25.

By Section 4B of the School Code the legislature enacted certain very general standards to regulate the discretion of the Trustees. The reviewing courts must take cognizance of the fact that these standards as thus set up are for the guidance of the administrative bodies and not for this court to apply on review to conflicting evidence. The power to reverse the action of the Trustees comes to an end when we determine from the record that they have not departed from such standards and their findings are not contrary to the manifest weight of the evidence.

The Trustees have duly conducted the hearings required by Section 4B–4. The absolute standards of Section 4B–3 have been complied with. The only question we have to decide is whether the findings of fact of the Trustees are supported by the record.

There was evidence heard by the Trustees as to the lack of facilities in District No. 6, by the Superintendent of the District, who testified that in his opinion recognition will be granted by the Superintendent of Public Instruction even though this area be detached therefrom. We cannot say that the findings by the Trustees that the granting of the petition will not cause either District to lose recognition, is contrary to the manifest weight of the evidence. In the exer-

cise of their discretion the Trustees found that the granting of the petition would be in the best interests of the schools and the educational welfare of the pupils. That is a discretion that is by law vested by the legislature in the Trustees. This court is not authorized to exercise that discretion. It can only pass upon whether there is substantial evidence in the record in support of the findings. The Trustees have considered and determined the immediate benefit to the pupils in the territory in dispute; the benefit in tax revenue to District No. 12 and the consequent loss to District No. 6; and the benefit of the removal of the pupils from District No. 6 which is suffering an acute housing problem. They have considered the future plans and needs of the Districts and the failure of District No. 6 under financial stress to increase its tax rate by referendum. They have considered and have heard the evidence on the bond issue referendums for a new school in the eastern part of District No. 6 and that the same were defeated by the voters in the western part of the District where the disputed territory is located.

It is aptly said in Community Consol. School Dist. No. 201 of La Salle County, Ill. v. County Board of School Trustees of La Salle County, Ill., 7 Ill.App.2d 98, at page 102: "While it is true that the loss of the valuation might cause an increase in the tax rate, surely the legislature had this in mind when it provided a method of detaching property from one school district and annexing same to another, knowing that in each such case there would be some financial loss to the school district from which the territory was detached. It was certainly not the intention of the legislature to freeze the boundaries of school districts in order to prevent an increase in the tax rate." And again the court say: "It can readily be seen, therefore, that District No. 201 is nowhere near its legal statutory rate. And, even if it was, the rate could be raised

126

by referendum. In the case of Trustees of Schools v. School Directors of District No. 2, etc., 190 Ill. 390, it was held that a proposed change in a school district is not rendered unjust, unreasonable and oppressive by the fact that to carry out such change the district will have to be taxed to the statutory limit."

The Trustees saw the witnesses, received the report from the County Superintendent of Schools as to the school needs and as to whether it would be to the best interests of the schools of the area and the educational welfare of the pupils that the territory be detached from District No. 6 and annexed to District No. 12. It is probable that these factors could not be weighed on the analytical scale of the "best interests of the schools of the area and the educational welfare of the pupils" by the Trustees and this court without some varying opinions but they must be weighed. That burden has been placed upon the Trustees by the legislature. The Trustees are more familiar with the local problems involved and far better able than this court to evaluate the numerous factors involved in the division of assets and tax revenues between the Districts. They are better acquainted with the movement of industry and population in the community. They can better understand the local conditions which cannot come to life to us from the cold record. They can best judge the ability of the Districts to meet demands for increased revenue and the intensity of conflicting opinions within a school district which may prevent any improvement of the school facilities or educational program within the foreseeable future.

██ It is true that with every detachment there is a resulting loss of tax base valuation and in income to the district losing a portion of its territory. This cannot be considered as preventing detachments and annexations for the legislature has seen fit to permit such action with evident knowledge of the consequences. School districts are given the remedy of in-

creased tax income by referendum and a failure or a refusal of the electorate to accept this remedy is not conclusive in a detachment proceeding. Any tax rate, approved by proper referendum, within the limits set by the legislature, is valid. (Trustees of Schools v. School Directors of Dist. No. 2, 190 Ill. 390.) We cannot say it is unjust, unreasonable and oppressive to levy a tax within the limit fixed by the legislature. Nevertheless such refusal may cause residents of the district who desire better school facilities to seek to annex to the district which in their opinion is more desirable.

██ It is necessary for us to consider the over-all school situation. School districts as such own no property. Their status, in our system of government in this State has many times been determined by the courts. The law on this subject is well stated in the case of People v. Deatherage, 401 Ill. 25, at pages 31 and 32, where it is said: "With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies. The State may hold or manage the facilities directly or indirectly. The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and the district may be abolished. All this at the will of the legislature. The 'property of the school district' is a phrase which is misleading. The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject to the legislative will. People ex rel. Taylor v. Camargo School Dist., 313 Ill. 321, and cases cited therein."

██ In the present case the Trustees have accepted the delegation of this legislative power and carried out

its execution in accordance with statutory methods. It matters not that we might weigh the statutory facts differently or execute the power in another manner. From this record it appears that there is substantial evidence therein supporting the findings of the Trustees and we cannot say that their order is contrary to the manifest weight of the evidence.

The judgment of the Circuit Court of Sangamon County affirming the decision of the County Board of School Trustees is affirmed.

Judgment affirmed.