Board of Education of Community Unit School District No. 323, Winnebago and Stephenson Counties, Illinois, and Community Unit School District No. 323, Winnebago and Stephenson Counties, Illinois, Plaintiffs-Appellants, v. County Board of School Trustees of Winnebago County, Illinois; Board of Education of Community Unit School District No. 321, Winnebago and Stephenson Counties, Illinois; Community Unit School District No. 321, Winnebago and Stephenson Counties, Illinois, Defendants and Certain Defendants-Appellees; Georgia Kissack et al., Defendants.

## Gen. No. 11,161.

Second District, Second Division.

October 8, 1958.

Released for publication October 25, 1958.

Peter C. Kostantacos, of Rockford, for appellants.

Thomas A. Keegan, of Rockford, for Board of Education of Community Unit School District No. 321, Community Unit School District No. 321, appellees.

John B. Anderson, State's Attorney for County Board of School Trustees, appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is an appeal from a final order of the Circuit Court of Winnebago County, Illinois, affirming an order of the County Board of School Trustees of Winnebago County, directing the detachment of certain land from Community Unit District No. 323, Winnebago and Stephenson Counties, and its annexation to Community Unit School District No. 321, Winnebago and Stephenson Counties. For convenience we shall hereinafter refer to the districts as District No. 323 and District No. 321. The petitioners, six in number, and constituting all of the voters and residents of the area in question—206 acres—filed their petition pursuant to Article 4 B of the School Code (Ill. Rev. Stats. 1955, Chap. 122, Section 4 B—1 et seq.) with the County Board of School Trustees seeking detachment from District 323 and annexation to District 321. Petitioners had on at least two prior occasions petitioned for the same relief, the last petition being filed some seven months prior to the present petition and the County Board of School Trustees denied the earlier petitions.

The County Board of School Trustees granted detachment and annexation as prayed in the present petition. Pursuant to the Administrative Review Act (Ill. Rev. Stats. 1955, Chap. 110, Sec. 264 et seq.) an appeal was taken to the Circuit Court of Winnebago County by the Board of Education of District 323 and District 321 and the Circuit Court affirmed the order of the County Board of School Trustees. This appeal followed:

The sole issue on this appeal is whether the order of the County Board of School Trustees was against the manifest weight of the evidence.

■ ■ As a court of review our power and duty is to determine if the findings of the County Board of

198

School Trustees are against the manifest weight of the evidence, Secaur v. Civil Service Commission, 408 Ill. 197, 203; School Directors of District No. 82 v. County Board, 15 Ill.App.2d 115, 119. Although the findings of the administrative agency on questions of fact are deemed to be prima facie true and correct (Ill. Rev. Stats. 1955, Chap. 110, Sec. 274), and though courts are not authorized to substitute their judgment for that of the agency where the findings of the agency are supported by substantial evidence, nevertheless the courts have the positive duty to ascertain if the findings and decision of the administrative agency are supported by the evidence. If not, it is the duty of the courts to set the decision of the agency aside, Oakdale Community Consol. School Dist. No. 1 v. County Board of School Trustees of Randolph County, 12 Ill.2d 190, 195; Trico Community Unit School District No. 176, Perry, Randolph and Jackson Counties, Ill. v. County Board of School Trustees of Randolph County, Ill., 8 Ill.App. 2d 494, 497.

Section 4 B—4 of Article 4 B of the School Code (Ill. Rev. Stats. 1955, Chap. 122, Sec. 4 B—4), after providing for a public hearing on a petition for detachment and annexation from one school district to another provides as follows:

". . . The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted. . . ."

199

█ Section 4 B—4 thus sets up standards to guide the County Board of School Trustees in arriving at its determination whether to allow or disallow detachment from one district and annexation to another. It is clear from the provision cited that although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries. The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions should be granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole, Oakdale Community Consol. School Dist. No. 1 v. County Board of School Trustees of Randolph County, 12 Ill.2d 190, 195; Trico Community Unit School District No. 176, Perry, Randolph and Jackson Counties, Ill. v. County Board of School Trustees Randolph County, Ill., 8 Ill.App.2d 494, 497.

We turn now to a consideration of the evidence. District 323, the appellant here, was formed in 1954 when the greater part of District 321 was detached to form District 323. The land in controversy was part of District 321 prior to the establishment of District 323. The territory in controversy consists of two farms, the farm of Richard Sarver and the farm of William Kissack. Only Richard Sarver testified for the petitioners. Mr. Sarver had no children of school age, the older of his two children being aged four. William Kissack had grandchildren of school age. Sarver lived in District 321 for a number of years and centered his activities in Pecatonica, Illinois, which is the principal attendance center for District 321. However, Winnebago, Illinois, the principal pupil attendance center of District 323, is closer than Pecatonica

200

to the lands in question. Sarver testified that all his relatives are in Pecatonica, and that because of his long connection with and interest in Pecatonica and the Pecatonica schools, he wished to seek election as a member of the Board of Education of District 321. District 321 has an assessed valuation of $11,000,000, an area of about 77 square miles, a population of 2,530, and maintains grades 1 through 12, serving a total of 539 pupils of whom 487 attend school in Pecatonica, Illinois. District 323 has an assessed valuation of $13,000,000, an area of about 90 square miles, a population of 2,800 and maintains grades 1 through 12, serving a total of 721 pupils, of whom 579 attend school in Winnebago, Illinois. Both districts are involved in building programs. As between the school districts there is no material difference in the educational advantages offered, and Richard Sarver conceded that fact in his testimony. Transportation is furnished by both districts to the area in which the petitioners reside. Curricula and physical accommodations of the district are substantially the same. According to Richard Sarver, who alone testified for the petitioners, the most compelling reason for the petition was the desire of Mr. Sarver to run for election to the Board of Education in District 321 and to eventually send his children to the school in Pecatonica, which is the center of his social and family activities.

▪ Petitioners admit that the motives behind the petition here are almost entirely the personal preferences and convenience of the petitioners. Petitioners further admit that the personal preference and convenience of the petitioners are not controlling in determining the issue of school boundaries. Nevertheless, petitioners argue in their brief that the decision of the board should not be upset so long as the "weight of the evidence here did not dictate keeping these two farms in a district in which the voters did not choose

201

to remain." Petitioners' argument misses the point, for it misconceives the applicable principles with reference to the evidence necessary to support the board's findings and decision. The findings and decision of the board must be supported by substantial evidence, Mohler v. Department of Labor, 409 Ill. 79, and its order must have foundation in the record, Curtis v. State Police Merit Board, 349 Ill. App. 448. Petitioners overlook the fact that, if the board's decision is to stand, the weight of the evidence must support the detachment and annexation prayed for on the basis of the standards set forth in the School Code; those standards or tests may perhaps best be described as "the best interests of the schools and the pupils as a whole." The board's decision cannot be affirmed if it is arbitrary, and its finding that the change in boundaries will be in the best interests of the schools of the area and the educational welfare of the pupils cannot be approved if it is in nowise borne out by the evidence in the record.

There is absolutely nothing in the record to support the board's finding that the transfer would be in the best interest of either district or for the educational welfare of any pupils. Clearly to take area and revenue away from District 323 would cause some harm to that district. There is evidence in the record that the major part of District 321 was detached and established as District No. 323 in August 1954. Thereafter District 321 and District 323 embarked upon building programs, obviously with existing area, funds and population in mind. Any change in area, funds and population naturally disturbs in some measure such plans and programs. Aside from personal considerations suggested by the witness and petitioner, Richard Sarver, there is nothing which indicates to us that the proposed change would effect any educational improvements in the territories as a whole. On the contrary, changes in boundaries, however small in themselves,

202

have the harmful effects to which we have just adverted. The legislature has seen fit to impose upon the board the duty of ascertaining before it acts the effect of its decision not only upon the particular territory described in the petition, but also upon the schools of the surrounding area.

Unfortunately, in our modern system of education, with its complex revenue, transportation and other problems, it is not possible to permit every child or every parent to select the school district of which he may be a part. If there is to be some measure of stability in the boundaries of school districts, they cannot be changed for reasons of mere personal preference of the residents of the territory without regard to other material considerations.

When the evidence in the record here is measured by the statutory standards this Court finds it insufficient to support the decision of the County Board of School Trustees. As the Court observed in Trico Community, etc. v. County Board, etc., 8 Ill.App.2d 494: "Although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the Board's decision to change established boundaries. The welfare of the affected districts and the pupils as a whole, must control, rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing or affected lands clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole."

This rule was recently approved by the Supreme Court of Illinois, Oakdale Community Consolidated School Dist. No. 1 v. County Board of School Trustees of Randolph County, 12 Ill.2d 190, where the court observed, p. 193:

"But personal preference and convenience do not control, under the system in effect in this State. School boards have been given the power, within the limits of

203

a reasonable discretion, to decide such questions for the parents. This power, however, is not an arbitrary one. Orders effecting a change of boundary must be made in conformity with the standards prescribed by the legislature and designed with an eye to the educational welfare of the children residing in all the territory to be affected."

The court pointed out that school districts cannot have their boundaries changed solely by the shopping, banking or school preferences of those residing in particular segments thereof.

For these reasons it is our opinion that the findings and decision of the County Board of School Trustees were against the manifest weight of the evidence and the lower court erred in affirming its decision. The judgment of the Circuit Court of Winnebago County is therefore reversed.

Judgment reversed.

CROW, P. J. and WRIGHT, J., concur.