Robert D. Burgner, et al., Plaintiffs-Appellees, v. County Board of School Trustees of Peoria County, Illinois, and Board of Education of Richwoods Community High School District Number 312, Defendants.
Board of Education of Dunlap High School District Number 158, Defendant-Appellant.

Gen. No. 64-55.

Third District.

May 27, 1965.

Davis, Morgan & Witherell, of Peoria, for appellant.

James S. Dixon, and Swain, Johnson & Gard, of Peoria, for appellees.

CORYN, J.

The plaintiffs, Robert D. Burgner, et al., filed a petition pursuant to c 122, § 7-6, Ill Rev Stats (1963), with the County Board of School Trustees of Peoria County seeking to detach certain territory from Dunlap High School District 158, hereinafter called Dunlap, and to annex the same territory to Richwoods Community High School District 312, hereinafter called Richwoods. After a hearing pursuant to said statute, this petition was denied by the County Board of School Trustees. The plaintiffs then sought administrative review, and in a thorough review of such action of the County Board of School Trustees, the Circuit Court of Peoria County reversed the order of the County Board of School Trustees and granted the detachment from Dunlap and annexation to Richwoods. Dunlap is appealing from that decision of the

Circuit Court of Peoria County contending that the Circuit Court erred in finding that the decision of the County Board of School Trustees was contrary to the manifest weight of the evidence, and that the Circuit Court improperly substituted its judgment for that of the County Board of School Trustees. Richwoods and the County Board of School Trustees have made no appearance in this appeal.

The evidence discloses that Richwoods has 2,045 pupils and Dunlap 269 pupils; that there are 110 teachers at Richwoods and 16 teachers at Dunlap; and that there are 106 courses of study offered at Richwoods and 40 courses offered at Dunlap. Richwoods is a typical suburban high school, while Dunlap is a small rural high school. Richwoods' facilities are more diversified and complete than Dunlap. Richwoods has a library containing 15,500 volumes compared to Dunlap's library of 2,500 volumes. Richwoods has a full time cafeteria, while Dunlap has only limited eating facilities. Richwoods has a more diversified sports program than Dunlap, and also has a physical education class for physically handicapped children. Also, Richwoods furnishes adult education classes and Dunlap does not.

The property in question constitutes approximately 5 per cent of the total assessed valuation of the Dunlap district, and less than 1 per cent of the assessed valuation of the Richwoods district. Richwoods is at its maximum tax rate for both the building and educational funds, while Dunlap is at its maximum tax rate for the educational fund only. The total tax rate in Richwoods is $1.47, and the total tax rate in Dunlap is $1.20. Evidence was presented by the plaintiffs indicating that the value of the property in the area in question would be increased if annexed to Richwoods. The area in question is either residential or undeveloped, and lies immediately north of and

269

adjacent to the land upon which the Richwoods high school is located, while it is nine miles from the Dunlap high school. There are 11 students in this area who are presently attending Dunlap. Some of these pupils if the change in boundaries is approved, are within walking distance of Richwoods, while others would have to ride the bus. Both districts offer bus service, although only Richwoods has bus service for those students participating in varsity athletics. Most of the families in this area have their business, social, religious, and community contacts in the greater Peoria area, of which Richwoods is a part, rather than in the Dunlap district. None of the families in this area objected to the original petition filed herein by the plaintiffs, Dunlap being the sole objector.

In addition to adjoining the Richwoods high school, the area sought to be detached and annexed to Richwoods is urban in character. Richwoods' facilities are oriented and planned for urban education, whereas Dunlap is located in the heart of a rural community. This factor is emphasized in the record before us by evidence that a community planning survey conducted by a three county planning commission, which includes in its number the Peoria County Superintendent of Schools, made recommendations to the County Board of Supervisors of Peoria County that the dividing line Between Richwoods high school and Dunlap high school be moved to the north in recognition of true community boundary lines which have developed. The recommended movement would include the area under consideration in this case.

 When a petition for detachment from one school district and annexation to another is filed, the County Board of School Trustees shall conduct a public hearing on said petition, and shall hear evidence as to the school needs and conditions, "and shall take into consideration the division of funds and assets

which will result from the change in boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." Ch 122, § 7-6, Ill Rev Stats (1963). "Orders effecting a change of boundary must be made in conformity with the standards prescribed by the legislature and designed with an eye to the educational welfare of the children residing in all the territory to be affected." Oakdale School District No. 1 v. County Board of School Trustees, of Randolph County, 12 Ill2d 190, 193, 145 NE2d 736. The detriment to the losing district, and the benefit to the annexing district shall be considered. Trico Community School District v. County Board of School Trustees of Randolph County, 8 Ill App2d 494, 497, 131 NE2d 829. However, as every detachment and annexation results in a loss of tax base valuation and tax income to the losing district, this alone should not prevent detachment and annexation, when the maximum tax rate is not being levied by the losing district. Calvert v. Board of Education, 41 Ill App2d 389, 395, 190 NE2d 640; Community Unit School District v. County Board of School Trustees of Sangamon County, 9 Ill App2d 116, 127, 132 NE2d 584. The personal wishes of the petitioners, standing alone, will not justify a change from one school district to another, but the factor of convenience to the parents and children should be considered as it is an obvious advantage to attend a school close to home and within one's natural community center. Burnidge v. County Board of School Trustees of Kane County, 25 Ill App2d 503, 167 NE2d 21; Virginia Community Unit School District v. County Board of School Trustees of Cass County, 39 Ill App2d 339, 188 NE2d 886. The findings and decisions of the County Board of School Trustees, in petitions of this nature, must be supported by the evidence, otherwise such findings

271

and decisions will be set aside by the courts. Trico Community School District v. County Board of School Trustees, supra. In Oakdale School District No. 1 v. County Board of School Trustees of Randolph County, 12 Ill2d 190, at 195, 145 NE2d 736, our Supreme Court specifically declared:

> "It is urged that the scope of review does not include a weighing of the testimony, and that an administrative order must be upheld if based upon evidence. The argument is not applicable here. The rule which accords a prima facie validity to administrative decisions does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. It is unnecessary for this court to advert to the dangers inherent in a relaxation of this function. . . . Our Administrative Review Act does not require judicial recognition of an order which is against the manifest weight of the evidence, 'nor does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings.' Drezner v. Civil Service Commission, 398 Ill 219, 231."

These observations are also applicable to the case before us.

██ In the instant case there will be no substantial detriment to Dunlap if it loses the area in question, nor will there be substantial benefit to Richwoods if annexation to it occurs. Also, Dunlap is not now utilizing its maximum tax rate. Unquestionably, there will be appreciable benefits to the families and children in this area if annexed to Richwoods as the children will be able to attend, in close proximity to their homes, a high school with superior educational, athletic, and

extracurricular facilities and programs. These children will also have the additional advantage of attending high school in the same area in which they have their natural community contacts. In Burnidge v. County Board of School Trustees of Kane County, 25 Ill App2d 503, 509, 167 NE2d 21, it was stated that it "is the fact that an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture."

For the reasons stated herein, we conclude that the decision of the County Board of School Trustees of Peoria County in refusing the requested detachment and annexation was contrary to the manifest weight of the evidence, and consequently the order of the Circuit Court of Peoria in reversing said decision is affirmed.

Affirmed.

ALLOY, P. J., concurs.

STOUDER, J., dissenting.

### DISSENTING OPINION

I must respectfully dissent from the majority opinion. The majority opinion was oriented in its entirety to one consideration and one only. This consideration is the convenience, desires and benefits to the residents of the affected area to be detached and can be considered only in the general statutory terms ". . . whether it is to the best interests of the schools of

273

the area and the educational welfare of the pupils." The convenience, desires and benefits to the residents of the affected area is only one of the factors affecting those statutory criteria and must, together with other factors, in the first instance, be determined by the County Board of School Trustees which the legislature has said shall be the instrument for that purpose. Much as we might enjoy directing the social progress of the area, we must be limited in that enjoyment by the statutory authority given to the Board and by court decisions construing that authority. This authority and those constructions have been used in the majority opinion. However their use has been subverted to the support of an unwarranted conclusion.

My colleagues have relied heavily on Oakdale Community Consol. School District No. 1 v. County Board of School Trustees, of Randolph County, 12 Ill2d 190, 45 NE2d 736, as authority for their decision but in quoting extensively from the case they have ignored its substance. Abundant evidence of the convenience, desires and benefits to the residents of the affected area were found insufficient to support the order of the Board. In the instant case similar evidence is now found sufficient to reverse the order of the Board. The Oakdale case says specifically, "The rule which accords a prima facie validity to administrative decisions does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact." This statement very clearly recognizes the prima facie validity of the Board's order and that such order will be set aside only upon a determination that it is against the manifest weight of the evidence. To this end it is necessary to examine the evidence impartially to see whether any disparity in weight between the opposing sides is so manifest as to necessitate the substitution of this Court's opinion for that of the

274

Board. My learned brothers have concluded that since they do not consider significant the evidence adduced by Appellant it must therefore have no weight and consequently the Board's opinion must be against the manifest weight of the evidence. The majority opinion does not examine or compare the evidence but states as a conclusion that there was in effect no substantial competent evidence to support the Board's finding.

I certainly agree that the evidence shows no appreciable benefit to the Richwoods District and that a substantial benefit in education and extra-curricular benefits would accrue to the eleven children and families of the area affected. I cannot however agree that the proximity of the area to Richwoods or the speculative increase in real estate values should be controlling and I most emphatically cannot agree that the evidence shows no substantial detriment to the Dunlap District. The very essence of the argument of Petitioners is that the smaller student enrollment and assessed valuation of the Dunlap District does not permit the variation of activity, both educational and otherwise, of the larger Richwoods District. They would therefore prefer to send their children to the larger school. Perhaps the decrease in assessed valuation, standing alone, would be no substantial detriment, however I cannot see how the loss of student enrollment, present and future, could fail to add to the problems already complained of and seriously handicap the pupils of the losing district. In view of this and by application of the very authorities cited in the majority opinion, I cannot see how a condition which is of no benefit or detriment to 2,045 students, of considerable detriment to 269 students and of considerable benefit to 11, can be said to be one in which, "the benefit derived from the annexing and affected areas out weighs the detriment resulting to the losing district and the surrounding community as a whole."

Trico Community School District v. County Board of School Trustees, of Randolph County, 8 Ill App2d 494, 131 NE2d 829 and Oakdale School District No. 1 v. County Board of School Trustees of Randolph County, 12 Ill2d 190, 145 NE2d 736. Nor can I say that the record discloses no substantial, competent evidence covering these points.

It is unfortunate that all school districts cannot offer the same variety of education but this must necessarily be true where there is disparity in size between districts. It is perhaps even more unfortunate that two such districts should adjoin but this again is a matter which it is not within the power of this Court to control.

The record discloses evidence on the part of the Dunlap district showing that the education available at Dunlap met the standard of accreditation for the State of Illinois and the North Central Association of Secondary Schools and Colleges. This evidence is undisputed. There is nothing in the record to suggest any higher rating by Richwoods but only that more than is necessary is offered.

School boundaries must be established somewhere and it would be patently unsound to urge that a district, by locating at its extreme corners could effect an automatic boundary change. It is equally unsound to suggest that a family wishing to live within one district may change its boundaries by orienting the family interests in the direction of another district.

In attempting to minimize the weight of the evidence adduced by Appellant, the majority opinion suggests that "none of the families in this area objected to the original petition . . . Dunlap being the only objector." It is not to be assumed that this Court would uphold the argument that the number of witnesses is any substitute for the quality of testimony.

276

The testimony for Petitioners consisted of families living within the affected area, the Principal and Business Manager of Richwoods and a planner associated as Executive Director of the Tri-County Planning Commission. The three latter witnesses did not give an opinion as to the educational welfare of either district or the affected area while the families living within the affected area gave an opinion only as to the effect such annexation would have on the families and real estate of that area. The testimony of the educators and school board members of the Dunlap District which this Court now states to be negligible is the only and best testimony one should expect under the circumstances. That which affects a school district is the business of the educators and Board of Trustees of that district. To take action on what affects that district is what they are hired and elected to do. The fact that the majority refers to the plan of the Tri-County Planning Commission as being in support of its decision illustrates their disregard of the central issue of this case. As is suggested by the plan, the boundary between the Dunlap and Richwoods Districts should be moved. However the plan presupposes the reduction in the number of school districts in Peoria County from the present 50 districts to 9 districts and ultimately to 7 districts and does not purport to propose or suppose that a boundary change as presented to us will not seriously injure a losing district.

In analyzing the record I suggest that this is a case in which the County Board could have found either way and either finding would have been supported by substantial competent evidence. Since this is my position I fail to see how the finding which it did make can be "against the manifest weight of the evidence" and believe that the Circuit Court of Peoria County should be reversed.