BOARD OF EDUCATION OF LOVINGTON COMMUNITY UNIT SCHOOL DISTRICT NO. 303, Plaintiff-Appellant, *v.* DALE MAYCROFT *et al.*, Defendants-Appellees.—(THE PEOPLE *ex rel.* PAUL L. STONE, Intervening Plaintiffs.)

Fourth District No. 15837

Opinion filed August 6, 1980.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellant.

L. Stanton Dotson, of Mattoon, for appellees Dale Maycroft and Marjorie Maycroft.

Mr. JUSTICE LEWIS delivered the opinion of the court:

On May 7, 1979, plaintiff, Board of Education of Lovington Community Unit School District No. 303, Moultrie County, Illinois (Lovington District), filed suit in the circuit court of Moultrie County against the following defendants: Dale and Marjorie Maycroft (Maycrofts); Regional Board of School Trustees, Counties of Clark, Coles, Cumberland and Moultrie, Illinois (Regional School Board), and

its Superintendent and the counties themselves; Board of Education of Arthur Community Unit School District No. 305 (Arthur District); and the Regional Superintendent of Douglas and Piatt Counties. The suit sought review of a February 27, 1979, administrative order in which the Regional School Board granted Maycrofts' petition to detach 9 acres of their 140-acre tract of land from Lovington District and annex it to Arthur District. The circuit court affirmed the detachment order, and the Lovington District has appealed to this court, claiming (1) the school board improperly admitted hearsay evidence concerning a child's learning disability, and (2) the school board order of detachment was against the manifest weight of the evidence.

The bulk of the testimony at the administrative hearing centered around 11-year-old Todd Maycroft, who suffered from dyslexia, an impairment involving a reversing of word symbols and inconsistent perception. Todd had attended the Lovington District through third grade but has since transferred to the Arthur District, where his parents are now paying tuition.

The first defense witness, retired Arthur District Superintendent R. R. Wilson, testified that from an economic standpoint the transfer of the 9 acres requested here would be insignificant. Wilson stated that in his expert opinion Maycrofts should be allowed to choose the school district which they feel offers the best learning disability program for their son. Wilson's testimony was corroborated by both Todd's private tutor and by Dr. Ronald Matthew, a clinical psychologist and director of the Moultrie County Health Center. The tutor stated that with Todd's retarded reading levels he would do best at a school where both he and his parents felt secure, and that the cooperation exhibited by Arthur District personnel was excellent. Dr. Matthew testified at length concerning Todd's disability and concluded there would be great danger in removing him from the Arthur District. Dr. Matthew stated that his opinions were based on both his own observation and communications with other experts, including two letters which plaintiff claims should not have been introduced into evidence.

The Maycrofts also testified about the cooperation received from the Arthur District and how much more progress Todd had shown in the Arthur District than in the Lovington District. Mr. Maycroft also detailed the enormous expense Todd's learning was costing them without the annexation to the Arthur District.

The evidence presented on behalf of plaintiff did not dispute the fact that the Maycrofts lived nearly equidistance from the two schools, nor did it dispute the quality of the Arthur District's remedial program. Plaintiff's evidence merely tended to establish that the Lovington District also had a

fine remedial program that had worked hard on Todd's behalf during his schooling there. Plaintiff's experts believed that the progress Todd was showing was the combined result of all efforts expended on his behalf, and not because one district offered advantages over the other.

■■ Plaintiff's first contention, that the school board improperly admitted hearsay evidence of Todd's disability and learning progress, can be discussed summarily. The expert correspondence at issue here was at most cumulative evidence of points which were established by a great deal of other evidence. Section 12(2) of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 275(2)) provides:

> "Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him."

In the case at bar plaintiff has not convinced us that the introduction of such cumulative evidence deprived it of a fair hearing or resulted in a substantial injustice. (See *Schwartz v. Civil Service Com.* (1954), 1 Ill. App. 2d 522, 117 N.E.2d 874.) Reversible error did not occur.

■■ Plaintiff also contends that the order of detachment was contrary to the manifest weight of the evidence. The controlling consideration in ruling upon a detachment petition is contained in section 7—6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7—6), which in pertinent part states:

> "The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area *and the educational welfare of the pupils* that such change in boundaries be granted, and in case non-high school territory is contained in the petition the normal high school attendance pattern of the children shall be taken into consideration." (Emphasis added.)

Plaintiff is correct in asserting that personal preferences alone are not a sufficient justification for detachment. (*Oakdale Community Consolidated School District v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736; *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 367 N.E.2d 788; *Crainville School District No. 37 v. County Board of*

*School Trustees* (1961), 32 Ill. App. 2d 143, 177 N.E.2d 248; *Board of Education v. County Board of School Trustees* (1958), 19 Ill. App. 2d 196, 153 N.E.2d 378.) But in the case at bar more than personal preference is involved. Here the record contains undisputed evidence that the particular student involved had a serious learning disability, and the granting of the petition would have no substantial impact on either district. In such a situation we are reminded of a statement made by the Appellate Court for the Second District:

"So far as any benefit or detriment to either district is concerned the record shows that neither district will be affected in any substantial measure. Thus, the determination should be made to turn *solely upon the welfare of the pupils.*" (Emphasis added.) *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 509, 167 N.E.2d 21, 24.

■ In the case at bar other factors were roughly equal so the determination should "be made to turn solely upon [Todd's] welfare." Although there was some dispute as to whether the Arthur District had a superior remedial learning program there was substantial evidence tending to show that the program of the Arthur District was superior for treating Todd's particular disability. Therefore we cannot conclude that the decision reached here was contrary to the manifest weight of the evidence. If the record contains evidence which substantially supports the school board decision, it is the duty of this court to affirm that decision. (*Ottawa Township High School District No. 140 v. County Board of School Trustees* (1969), 106 Ill. App. 2d 439, 246 N.E.2d 138.) Since there is substantial evidence supporting the decision in this case, we affirm.

Affirmed.

MILLS, P. J., and GREEN, J., concur.