School Directors of School District No. 82, County of Whiteside, and State of Illinois, et al., Plaintiffs-Appellees, v. County Board of School Trustees of Whiteside County, Illinois, et al., Defendants-Appellants.

School Directors of School District No. 82, County of Whiteside, and State of Illinois, et al., Plaintiffs-Appellants, v. County Board of School Trustees of Whiteside County, Illinois, et al., Defendants-Appellees.

Gen. Nos. 11,076, 11,077, consolidated.

Second District, Second Division.

October 9, 1957.

Released for publication October 28, 1957.

Earl L. Scott, of Erie, attorney for appellant in case 11,077; Donald L. Sipe, of Prophetstown, for appellant in 11,076.

Donald L. Sipe, of Prophetstown, for appellee in case 11,077; Earl L. Scott, of Erie, for appellee in 11,076.

JUSTICE SOLFISBURG delivered the opinion of the court.

Both of these cases are actions under the Administration Review Act (S.H.A. Ch. 110, Sec. 264 et seq.) for review of decisions of the County Board of School Trustees of Whiteside county and the resulting decisions on appeal to the Circuit Court of that county. Pursuant to the provisions of Article 4B of the School Code (S.H.A. Ch. 122, Sec. 4B—1 et seq.) petitions for detachment were filed with the School Trustees, who after timely notice and hearings detached two tracts of land from School District No. 82 in Whiteside county and annexed them to Community Consolidated School District No. 146 in Whiteside county. By stipulation of the parties, the cases were consoli-

117

dated for purposes of argument. Because of the common questions of law involved, we have consolidated them for decision.

In case No. 11,076 the disconnection of 320 acres from School District 82 was reversed by one circuit judge of Whiteside county. In case No. 11,077 the disconnection of some 130 acres was affirmed by another circuit judge of Whiteside county. For the sake of convenience, we shall refer to the districts as District 82 and District 146.

The facts may be concisely stated. District 82 with an assessed valuation of some $693,000, a tax rate of .90 and a population of about 300 persons has a one-room school with one full time teacher and one part time music teacher, located in the small community of Spring Hill, Whiteside county. It has an average daily attendance of 29.09.

District 146 with an assessed valuation of $2,071,000 and a tax rate of 1.3214 has a new three-room school with three teachers. District 146 has a population of less than 2,000 persons and an average daily attendance of 55.10. Both districts are common school districts, maintaining grades one through eight, and furnish transportation. Both are duly accredited by the superintendent of public instruction. The disconnected territory, if the disconnections be allowed, would reduce the assessed valuation of District 82 by approximately seven per cent in one case and three per cent in the other. No witness, however, testified that such disconnection would disable District 82 from continuing its operation, nor so far as this record shows, force a reduction in any school facilities.

The first contention made by District 82 and the voters opposing disconnection of part of its present territories is that there was no evidence before the county board of school trustees of Whiteside county warranting a change of boundaries or that such a

118

change was in any event against the manifest weight of the evidence. As a court of review our power and duty is to determine if the findings of the county board of school trustees are against the manifest weight of the evidence, Secau v. Illinois State Civil Service Commission, 408 Ill. 197, 203, Community Consol. School Dist. v. County Board, 7 Ill.App.2d 98, 103. The board's findings and conclusions on questions of fact are held to be prima facie true and correct (S.H.A. Ch. 110, Sec. 274).

On a consideration of the records in both cases as a whole, it is the conclusion of this court that the decision of the county board of school trustees of Whiteside county in each case was supported by adequate evidence, considering the welfare of the affected districts and the pupils of each as a whole, balancing the benefit to the annexing District 146 with the detriment to District 82 from which the disconnection was effected. The evidence, it is true, is somewhat conflicting, but the trustees saw the witnesses, are familiar with the local problems involved, can evaluate the numerous facts involved in the division of tax assets between the districts, and better understand the local conditions with which they must deal on a day to day basis, Community Unit School District v. County Board of School Trustees, 9 Ill.App.2d 116, 127.

The decisions of the trustees that the districts affected after detachment were compact and contiguous as required by Sec. 4B—3(c) of the School Code (S.H.A. Ch. 122, Sec. 4B—3(c)) are likewise supported by the evidence. Neither petition creates a "corridor" so as to form a district in the shape of a dumbbell. A mere irregularity of boundary lines results such as exists in hundreds of districts. The objectors concede that the districts need not be rectangular nor the boundaries straight lines. The proposed change would not affect the distance any pupil in

119

District 82 needs to travel nor his route. The requirements of compactness and contiguity are fully met, People ex rel. Dixon v. Community School Dist., 2 Ill.2d 454, 463, People ex rel. Leighty v. Young, 301 Ill. 67, 71, People ex rel. Warren v. Drummet, 415 Ill. 411, 419.

In case No. 11,077 an additional objection is raised with respect to compactness and contiguity. The proposed change would detach an area on which no one resides from a farm of larger area and attach it to another district in order to cause a more distant farm home to be in an area contiguous to the district of attachment. Although we are cited no authority on this question and our research has revealed none, we see no logic in holding that occupance of land as such is material. The statute specifically provides for cases where there are no residents on any part of the area in question, Sec. 4B—1 of the School Code (S.H.A. Ch. 122, Sec. 4B—1). On the other hand, the statute wisely does not require that district boundaries must conform to the outlines of farms as they may exist by deed. Farm boundaries are subject to alteration at any time and have very little permanency about them. We do not regard this as a valid objection. We cannot say that the judgments of the trustees upon the records before us were either unsupported by evidence or that such decisions were against the manifest weight of the evidence.

It was for the trustees to decide whether the 10 per cent loss of assessed valuation resulting from both disconnections would unduly handicap District 82 in the performance of its educational functions. No witness testified that the disconnections would involve a cessation or reduction of any part of the operations of District 82. This case thus is factually different from the case of Trico Community Unit School Dist. No. 176 v. County Board of School Trustees of Randolph County, 8 Ill.App.2d 494. In that case it appeared that

if the petition were granted, one school building would have to be closed and that a transportation problem as well as school overcrowding problem would result in the district to which attachment was sought.

The second and principal contention of District 82 involves the construction of Section 4B—3 of the School Code (S.H.A. Ch. 122, Sec. 4B—3).

Section 4B—3 reads as follows:

"No petition shall be granted under Sections 4B—1 or 4B—2 of this Act . . . (d) to create any school district with a population of less than 2,000 unless the Superintendent of Public Instruction and the county superintendent of schools of each county in which the proposed district will lie shall certify to the county board or boards of school trustees that the creation of such a new district will not interfere with the ultimate reorganization of the territory of such proposed district as a part of a district having a population of 2,000 or more.

"(e) If after the change of boundaries any district has less population or assessed valuation than required for the creation of a district of like type."

Since both districts have a population of less than 2,000, District 82 contends that since it could not be created under Sec. 4B—3(d), its boundaries may not be changed, for the effect of such boundary change by disconnecting the territories involved here would certainly leave it with less than 2,000 population contrary to Sec. 4B—3(e).

District 146 contends that the statute in question does not apply to a common school district which never had and does not now have 2,000 population.

To resolve this important question this court has carefully considered the able briefs of counsel and the School Code as an entirety. The carefully considered written opinions of both learned trial judges have greatly assisted us in our decision.

121

■ As previously stated, District 82 and the other objectors advance the theory that Section 4B—3(e) applies equally to all districts of the state without regard to size, or mode or time of creation, or the statutory authority to which they owe their existence. Such a construction is possible if you do not look beyond the section or paragraph. However, this is not the proper method of construing statutes. The legislative intent must be gathered from the entire act, rather than from one clause, sentence, or section thereof, and courts may not confine their attention to one part or section to be construed, Illinois Bell Tel. Co. v. Ames, 364 Ill. 362, 365, People v. Giles, 268 Ill. 406.

■ This court may take judicial notice of the fact that over the years the Illinois General Assembly has been trying to provide for reorganization of our somewhat haphazard school system into a system which is as efficient, uniform and equitable as conditions will permit. This attempt must necessarily be a gradual one due to many obvious difficulties, such as availability of physical plants, transportation problems, assessed values, required income, shifting populations, and many other factors. Article 4B is the key to this attempt to improving our present school system, and it must be interpreted in such a way as to make it a consistent and implementing part of the lengthy and elaborate School Code. As was said in People ex rel. High School Dist. v. Hupe, 2 Ill.2d 434, 448: "Although the school law consists of different articles and different sections, it is to be construed as one entire act."

All school districts were created originally without specific limits of population. Article 6 of the School Code provides for districts of less than 1,000 persons, under boards of school directors. Other districts have a board of education, and different laws apply to the two classes. The modern trend is to create districts of

122

greater area and population, with a view to elimination of the one-room school house with one teacher. However, with the exception of urban areas, the number of elementary school districts having 2,000 population will be a small percentage of the total.

It is common knowledge that the history of school districts in Illinois has been that parts of districts will from time to time detach and be added to other districts so as to provide for better facilities and greater accessibility. Remaining parts of districts tend to merge into other districts. In this manner larger districts, both in area and population, result. These changes, naturally, must be gradual as the conditions and requirements of all parties must be considered.

Article 4B indicates an ultimate goal for school districts of 2,000 population. The argument of the objectors is that, prior to attainment of that goal, minor adjustments cannot be made in the boundaries of small districts. The necessary result is that literally hundreds of small districts are frozen into their present boundaries. Even assuming that the certificates referred to in Section 4B—3(d) may be used in connection with sub-par. (e), its value would be lost in the larger districts which are the aim of the legislature. Rather than encouraging reorganization into larger districts, the construction urged by the objectors would tend toward a contrary result. On the other hand, allowing small districts now less than 2,000 in population to accommodate shifting populations and to meet a variety of changing conditions, fiscal, personal and educational, which beset every educational subdivision from time to time, would enable short run needs of the smaller school districts to be met with efficiency and dispatch while not preventing the gradual evolution of larger districts. We conclude that the legislature intended to encourage the development of districts of 2,000 population, and that once that figure has been

123

reached, changes should not be made to reduce them again below that figure and that this is the real purpose of sub-par. (e).

We find further confirmation of this construction in the language of sub-par. (e). It refers to the "creation of new districts *of like type*." The three italicized words do not necessarily mean merely of like classification, such as high school, grade or unit district. This is particularly true of districts existing under Article six of the Code, which have no minimum population but actually a maximum population limit of 1,000. It is an unnecessary stretch of meaning to say that these districts under Article 6 are of like type with districts of 2,000 population. In addition, sub-par. (d) is only one method of creating districts and merely regulates their creation by petition. An examination of the School Code reveals that the creation of districts by petition is but one method of establishing a district; it may be created by election. Sub-par. (d) does not repeal other sections in the School Code (Articles 6 and 8) which authorize creation of districts by election.

District 82 places some reliance for its position on certain language contained in an opinion of this court, Stehl v. County Board of School Trustees, 7 Ill.App.2d 257, 261, 262. That decision was concerned with Section 4B—3 prior to its amendment on July 9, 1955, on which date sub-par. (e) was added thereto. In commenting on this amendment in the Stehl opinion we observed that the language of the amendment served to make clear that Section 4B—3(d) was concerned only with the creation of new school districts and not with changes or alterations in existing school districts. Our observation was not intended to indicate anything more.

■ ■ Statutes must be reasonably construed so as to be applied in a reasonable and common sense manner, People ex rel. Singer v. Illinois Cent. R. Co.,

124

373 Ill. 523, 527. Absurd results must be avoided, Winner v. Kadow, 373 Ill. 192, 195, Moweaqua Coal Corp. v. Industrial Com., 360 Ill. 194, 200. After careful consideration of all the arguments advanced by the parties, it is our conclusion that a small district which presently does not have and never has had a population of 2,000 is not included in the population requirement found in Section 4B—3(e).

For the reasons above stated, the decree of the trial court in case No. 11,077 is affirmed, and the decree of the trial court in case No. 11,076 is reversed and the cause remanded with directions to enter a decree affirming the decision of the County Board of School Trustees of Whiteside county.

Cause No. 11,076 reversed with directions; Cause No. 11,077 affirmed.

CROW, P. J. and WRIGHT, J., concur.