People of the State of Illinois, Appellant, v. Ruth M.
Petropoulos, Appellee.

Gen. No. 50,190.

First District, Fourth Division.

May 6, 1965.

William G. Clark, Attorney General, of Springfield
(Daniel P. Ward, State's Attorney, of Chicago, Fred

G. Leach and George W. Kenney, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for appellant.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Chester P. Majewski and James J. Doherty, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

The State appeals from an order of the Circuit Court discharging defendant on the statutory ground that she had not been brought to trial within 120 days from the date on which she had been taken into custody. Ill Rev Stats 1963, c 38, § 103–5.

Defendant was arrested on January 15, 1964 for the sale of heroin, in violation of section 3 of the Uniform Narcotic Drug Act. Ill Rev Stats 1963, c 38, § 22–3. A preliminary hearing was convened the next day but no action was taken by the court at that time, and the matter was continued to March 5, and again to April 22, 1964. On that date a hearing was held and defendant was bound over to the grand jury. The indictment was returned on May 12, 1964. Arraignment took place on May 19, at which time the Public Defender was appointed to represent defendant. Before the case was reached for trial, defendant filed her petition for release on the ground indicated, she having been in custody continuously from the time of her arrest. The petition was allowed on May 26, 1964.

Appeal was taken by the State to the Supreme Court, which, on the State's own motion, transferred the case to this court.

The issue in the trial court turned on whether or not either of the continuances in the preliminary

hearing had been occasioned by defendant. That same issue is the one which the State would now have us review. First, however, we must consider the primary point made by defendant that the State has no right of appeal in this type of case.

## The State's Right to Appeal.

Historically, in Illinois criminal cases the State had no right to appeal or writ of error either at common law (People v. Dill, 2 Ill 257 (1836); People v. Royal, 2 Ill 557 (1839) on double jeopardy grounds), or under the statute of 1845 (People v. Barber, 348 Ill 40, 41, 180 NE 633, regardless of the jeopardy question).

In the statute of 1874 it was expressly provided that "in no criminal case shall the people be allowed an appeal, writ of error or new trial." Ill Rev Stats 1931, c 38, § 747. After almost a century legislative provision was finally made for a limited right of review on behalf of the State, when that section of the statute was amended in 1933 by adding:

> "The People may sue out writs of error to review any order or judgment quashing or setting aside an indictment or information." Ill Rev Stats, 1933, c 38, § 747.

In the same amendatory act the broad prohibition against appeals by the State was consequently narrowed to provide only that "in no criminal case shall the people be allowed a new trial."

In a fairly long line of cases (including People v. White, 364 Ill 574, 5 NE2d 472; People v. Vitale, 364 Ill 589, 5 NE2d 474; People v. Moore, 410 Ill 241, 102 NE2d 146; People v. Mosby, Supreme Court No. 36052, Sept. 1960; People v. Drymalski, 22 Ill2d 347, 175 NE2d 553), it was consistently held that the State's authority to appeal was a narrow right which

could not be expanded by the courts beyond the specific statutory language. Thus it came to be considered "established practice" (Moore) that the only unfavorable judgments from which the State might seek relief in a reviewing court were those in which the indictment was quashed for failure to meet material requirements. The Supreme Court declined to hear, for example, cases involving State appeals from a successful plea of former conviction (Vitale), a plea in bar based on the defendant's good-faith performance of judicial duties (Drymalski), and a discharge under the "Four-Month Act" (Mosby).[1]

The issue now confronting us is whether or not this law has been changed by adoption of the amended article VI of the Illinois Constitution, the Code of Criminal Procedure, and new Supreme Court Rules, all of which became effective on January 1, 1964. On the same date, repeal of section 747 of the old criminal code became effective.

■ The constitution, previously silent on this point, now provides that "after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal." Art VI, § 7. We take it as settled that this prohibition against State appeal from an acquittal after a trial on the merits does not automatically authorize an appeal from all other orders or judgments in criminal cases. It merely has the effect of leaving that large area open to the legislature or to the Supreme Court as a field within which either may act. People v. Barber, 348 Ill 40, 46, 180 NE 633.

Our next inquiry, then, is to ascertain whether any steps have been taken to occupy this field. We find that they have, through the enactment of section 120–

---

[1] The statute involved in Mosby was Ill Rev Stats 1959, c 38, § 748, the predecessor to the statute involved in the instant case. Ill Rev Stats 1963, c 38, § 103–5.

1 of the Code of Criminal Procedure (Ill Rev Stats 1963, c 38, § 120–1) which reads in pertinent part:

§ 120–1. *Scope of Appeal.*

(a) Except as authorized by this article and Rules of the Supreme Court the State may not appeal in a criminal case.

(b) The State may appeal from any court an order or judgment the substantive effect of which results in:

(1) dismissing an indictment, information or complaint; or

(2) arresting judgment because of a defective indictment, information or complaint.

This section of the code has been superseded by Rule 27 of the Supreme Court (Ill Rev Stats 1963, (1964 Supp), c 110, § 101.27) which declares in pertinent part as follows:

(4) In criminal cases the State may appeal only from an order or judgment, the substantive effect of which results in dismissing an indictment, information or complaint; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

It may well be that this rule of the Supreme Court has authorized appeals by the State to the full extent permitted by the constitution. We need not decide the question on that broad a base, however, as we must only discover if the rule furnishes authority for appeal in the case at bar.

The scope of the rule is very broad, indeed. The State may now appeal from any order the substantive effect of which is dismissal of an indictment. While defendant in the instant case filed a "Petition for

Discharge," and the order of the court was that it "doth allow said motion," the proper procedure under the new code (section 114–1) would have been by a motion to dismiss. In any event, we will consider that the order appealed from is one "the substantive effect of which" has resulted in dismissing the indictment. Supreme Court Rule 27, quoted above.

The language of the rule, applying as it does to orders *dismissing* an indictment, leads us back to the code to determine its scope. Section 114–1 of the code (Ill Rev Stats 1963, c 38, § 114–1) reads in pertinent part:

§ 114–1. *Motion to Dismiss Charge.*

(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

(1) The defendant has not been placed on trial in compliance with Section 103–5 of this Code;

(2) The prosecution of the offense is barred by Sections 3–3 through 3–8 of the "Criminal Code of 1961," approved July 28, 1961, as heretofore and hereafter amended;

(3) The defendant has received immunity from prosecution for the offense charged;

(4) The indictment was returned by a Grand Jury which was improperly selected and which results in substantial injustice to the defendant;

(5) The indictment was returned by a Grand Jury which acted contrary to article 112 of this Code and which results in substantial injustice to the defendant;

(6) The court in which the charge has been filed does not have jurisdiction;

(7) The county is an improper place of trial;

(8) The charge does not state an offense;

(9) The indictment is based solely upon the testimony of an incompetent witness;

(10) The defendant is misnamed in the charge and the misnomer results in substantial injustice to the defendant.

(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor, except as to subsections (a)(6) and (a)(8) of this section, are waived.

. . . . . .

(e) Dismissal of the charge upon the grounds set forth in subsections (a)(4) through (a)(10) of this section shall not prevent the return of a new indictment or the filing of a new charge. . . .

■ Defendant relies strongly upon the comments of the committee which prepared the tentative draft of the code for presentation to the legislature in 1961, and we recognize this as an appropriate source of assistance in determining legislative intent. People v. Tuohy, 31 Ill2d 236, 239, 201 NE2d 425. The committee reported that subsections (b)(1) and (2) [2] of section 120–1 "merely codify former section 747." With due respect to that learned committee, we cannot agree.

■ It must be noted that there is a consonance of terminology in the language of section 120–1, Supreme Court Rule 27, and section 114–1. They all contain a form of the verb "dismiss" in describing the

---

[2] Together with subsections (c)(1) and (2) which have no bearing on this case.

type of trial court action with which we are concerned.[3] Under these circumstances the words must be given a consistent meaning unless a contrary intent is clearly expressed. Moran v. Katsinas, 16 Ill2d 169, 174, 157 NE2d 38. We cannot discover any clear, intentional difference in meaning, and conclude, therefore, that the "dismissing" treated by section 120–1 of the code and Rule 27 must be equated to any "dismissal" entered on any motion to "dismiss" under section 114–1. To hold otherwise would be to denigrate the wealth of words available in the English language.

■ When we construe all three sources of authority together,[4] then a reading of section 114–1 discloses that the State's right to appeal, as expressed in repealed section 747, has been greatly broadened. The full extent of the right granted by section 747 is, to be sure, embodied in the new plan of procedure, but the State's right to review goes far beyond that.

■ As an example, a dismissal of an indictment by allowance of a motion based on former conviction is provided for by section 114–1(a)(2).[5] In our opinion Rule 27 now makes such a dismissal appealable by the State, whereas there was no authority for such a review prior to January 1, 1964. People v. Vitale, 364 Ill 589, 5 NE2d 474. We mention this only to indicate the breadth of the law's change which we

---

[3] Section 120–1 and Rule 27: *"dismissing* an indictment, information or complaint."

Section 114–1(a): *"dismiss* the indictment, information or complaint."

(b): "motion to *dismiss."*

(e): *"dismissal* of the charge."

[4] As we must: Illinois Bell Tel. Co. v. Ames, 364 Ill 362, 366, 4 NE2d 494; School Directors of Dist. No. 82 v. County Board, 15 Ill App2d 115, 122, 145 NE2d 285.

[5] Which, in turn, refers to section 3–4 of the Criminal Code. Ill Rev Stats 1961, c 38, § 3–4.

believe was accomplished by constitution, act and rule as of January 1, 1964.

Section 114-1(e) declares that there may be new indictments after dismissal on any of the grounds set forth in subsections (a)(4) through (a)(10). From this defendant argues, first, that there may be no new indictments after dismissal on the first three grounds of subsection (a), and, second, that therefore the State may not appeal in those cases. We do not agree with the second part of this contention even though the first part may be true. It seems to us a non sequitur. Reindictment and appeal are two different and separable legal propositions.

In cases involving the last seven grounds for dismissal, if the State wished to proceed further it would have the alternative of appeal or reindictment. Under the first three grounds, assuming without deciding that there could be no reindictment, there would still be open to the State the option of appeal from the order of dismissal. Expression of intention to this effect on the part of the drafting committee is found in their comments to section 3-4 of the Criminal Code [6] where it is stated that in the case of a pre-trial disposition which should bar a subsequent indictment, "[t]he proper way for the prosecution to test such a determination is to appeal therefrom, not to start another prosecution."

 So we turn to section 114-1(a)(1) which expressly covers the instant case by providing for dismissal of the charge if defendant is not placed on trial in compliance with section 103-5 of the Code of Criminal Procedure. [7] It is our conclusion that an order

---

[6] Incorporated into section 114-1(a) as one of the first three grounds for dismissal.

[7] As pertinent to this case that section provides:

§ 103-5. *Speedy Trial.*

308

dismissing an indictment on this ground may be appealed by the State on the authority of Supreme Court Rule 27.

## The Merits of the Appeal.

■ While the constitution guarantees to an accused the right to a "speedy public trial" (art II, § 9) it is the statute (§ 103–5) which implements that right and furnishes the method for its enforcement. Hence, the question of the statute's proper application, or an issue as to waiver of the constitutional right does not raise a constitutional issue beyond the jurisdiction of this court. People v. Morris, 3 Ill2d 437, 121 NE2d 810. Additionally on that score, we consider that defendant's somewhat oblique constitutional argument, based on the fact that she was not represented by counsel until arraignment, was dealt with adversely to defendant when the Supreme Court transferred the case to this court.

From the facts set forth at the beginning of this opinion it appears conclusively that defendant was not brought to trial within 120 days from the date on which she was taken into custody. It also appears from the record, however, that the 120-day period had expired by only five days when defendant petitioned successfully for a substitution of judge (formerly a change of venue), and moved also for a continuance in the trial date. Either of these motions was sufficient to fix a termination date for our study

---

(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by a competency hearing, or by an interlocutory appeal.

Ill Rev Stats 1963, c 38, § 103–5(a).

of the statute's applicability. People v. Iasello, 410 Ill 252, 255, 102 NE2d 138. Consequently, the crux of the trial court's decision was its consideration of the record in the light of the statutory clause—"unless delay is occasioned by the defendant." For it is undisputed that the preliminary hearing was continued twice (each time for about seven weeks), and if either such delay was "occasioned by the defendant" then her petition for release should have been denied. People v. Bagato, 27 Ill2d 165, 188 NE2d 716.

Turning first to defendant's own petition, we find that it comes fairly close to answering the question on its face, because it indicates quite clearly that at least one continuance was ordered at defendant's request. The petition states in part:

> [C]ontinuances were granted on one or more occasions at preliminary hearings . . . on the persuasion of police officer, Calvin McKelvey, who made promises to defendant that influenced such requests for continuances. . . .

The petition then goes on to say that, based on these circumstances, defendant "did not exercise a free choice in any continuances of record chargeable to her."

A transcript of the proceedings at all hearings has been included in the record, and resort must be had thereto since the record itself commences with the indictment, thus shedding little light one way or the other on defendant's petition for release. The People v. Tamborski, 415 Ill 466, 473, 114 NE2d 649.

The entire proceeding on January 16 before Judge Wendt appears in the transcript as follows:

THE CLERK: Ruth Petropoulos.
THE COURT: Is this controlled?

310

AN OFFICER: Yes, Your Honor, but I would like to have the bond reduced.

THE COURT: Wait a minute. I can't hold over her—

MR. PASSARELLA (Ass't. State's Attorney): I understand. The defendant is going to ask for a continuance.

THE COURT: Oh; what did you want? Put his name down and tell us what you want.

AN OFFICER: $2,000.

THE COURT: Can she make it?

AN OFFICER: Yes, sir.

THE COURT: Have you talked to her?

AN OFFICER: Yes, sir.

THE COURT: All right. 3–5. Ruth, you are asking for a continuance? Your case is continuanced until March the 5th, 1964. That is a Thursday, officer.

AN OFFICER: Yes, sir.

THE COURT: And you talked to her on the other matter?

AN OFFICER: Yes, sir.

THE COURT: All right. Take her back.

MISS PETROPOULOS: How much is the bond?

THE COURT: What? That will be told to you. They will tell you.

Pertinent parts of the hearing on March 5 before the same judge:

THE COURT: Ruth, are you asking for another continuance?

MISS PETROPOULOS: Yes.

THE COURT: You are entitled to it, but I just wonder what you gain sitting. You are back there now six weeks, aren't you? This case came in here January the 15th.

AN OFFICER: Yes, sir, Your Honor.

THE COURT: I just wonder what you gain. You are entitled to it, but you see, if, if you waive your constitutional rights to a preliminary hearing, and if it is a good case—is this a controlled buy, officer?

AN OFFICER: Yes, sir.

THE COURT: You would go to the grand jury, be indicted, go to the criminal division of this court, be arraigned, and have an attorney. If you would have done that on that day, you would have all of this time that you have been sitting here now on whatever time you may have gotten with a lawyer. Do you understand what I am saying?

MISS PETROPOULOS: Yes, sir; I do.

THE COURT: I am saying, do you still wish a continuance?

MISS PETROPOULOS: I'd like to know about the bond.

Defendant then asked for a bond reduction, but the court indicated that the bond which had been reduced in January to $2,000 would remain at that figure. A police officer interceded, however, and the court again reduced the bond to $1,000. Then followed:

THE COURT: All right. Motion of the defendant, 4–22–'64. You will be able to make that now?

MISS PETROPOULOS: I am pretty sure. It is $100.

At the April 22 hearing this took place:

THE CLERK: Ruth Petropoulos. Officer McKelvey. Ruth Petropoulos, are you ready for

hearing? You are charged with the sale of heroin.

MISS PETROPOULOS: Not especially, Your Honor. I would like to know—

THE COURT: You have had two continuances now. I will deny your motion. Swear the officer in. Let's hear the officer's testimony.

The policeman then testified to a controlled purchase of two packages of heroin from defendant, and the finding of four more packages in a search of her person following arrest. Defendant was held to the grand jury on bonds of $5,000 (sale) and $2,500 (possession). The following ensued:

MISS PETROPOULOS: It couldn't be any lower than that, the bond?

THE COURT: No; you have had your opportunity as I see by the file. The officer, he made a request for you one time. He is now withholding that request, is that right?

A. Yes, Your Honor.

Indictment followed, with bonds fixed by the grand jury at $10,000 and $5,000.

At arraignment on May 19 defendant asked for a two-week continuance as she was expecting her husband to get a lawyer. For the interim, however, the court appointed the Public Defender to represent her. When the court commented on her not having secured the services of a lawyer earlier, defendant replied: "Well, I didn't try really because I didn't think I would get a true bill." A plea of not guilty was entered and the case was assigned to Judge Harewood. The change of venue, above referred to, followed promptly, and the case was transferred back to the chief justice. It was then reassigned to Judge Dahl

at defendant's request because "some other fellow" whose case was before Judge Dahl had a lawyer she was supposed to have.

When the case was called by Judge Dahl defendant's counsel advised the court: "There is no fourth term problem here. There has been a change of venue, and the young lady has informed me that there were other continuances in the matter." He asked only for a bond reduction and a continuance of three weeks in the expectation of an appearance by private counsel. It was on the court's inquiry that discussion of the "fourth term" was entered into:

> MR. LEAHY (Ass't. State's Attorney): Judge, we don't know, in the past down in Narcotics Court, what continuances were taken by whom.
> THE DEFENDANT: Excuse me. I took one from January 16th until March the 5th, and from March the 5th to April 22nd.

The case was held on call till the next day when defendant's oral motion for release was filed. She also moved again for reduction in her bonds and they were reduced to $3,000 and $1,000. At the hearing on this motion the court was informed by defendant and both counsel that she had served one penitentiary term on a narcotics charge, and also had a record of arrests and some convictions for lesser offenses over an eleven-year period. Mention is made of these facts only for the purpose of indicating what we think was a rather extensive background in criminal procedures which gives helpful meaning to defendant's knowledgeable responses in the hearings under consideration. We refer to her having said "I took" two continuances; she was not expecting "a true bill"; she knew about furnishing only 10% of the bail; etc.

The case was put over to May 26 for the filing of a written petition for release. At the hearing thereon

there was a discussion about the bond reductions and continuances granted in the preliminary hearings, and the police officer's relationship thereto. The court stated its impression that the police were trying to get narcotics information from defendant. Commenting on this, defendant's counsel made the interesting observation:

> The Supreme Court has held this business is a clandestine one. I think it should work two ways. I think at times it should work on behalf in favor of the defendant. I think this is one occasion where something didn't work in the manner it was supposed to have worked and hung this woman up on the yardarm someplace.

The court then allowed defendant's petition and said: "Ask the State if they disagree with me to appeal the case." This, too, is an interesting observation, as it relates to the first point covered by this opinion.

From all the foregoing we believe that it is not necessary to read between the lines, but only to draw reasonable inferences from the record, in order to conclude that the basic aspects of this case are similar to those in People v. Bagato, 27 Ill2d 165, 188 NE2d 716.[8] What prompted this defendant to want delay in

---

[8] In Bagato the defendant, when told to do so by the police, had requested a continuance in the preliminary hearing so that he might work with the police on narcotics investigations, all in the expectation that this cooperation would inure to his benefit in his own case. His hopes were not realized. When the case came on for trial the defendant had been in custody more than four months following his arrest and he petitioned for release. The court held the statute inapplicable, and stated at page 170:

> [I]t would be a "mockery" of the judicial process to permit defendant, who did in fact request the five-week continuance for his own benefit, to now ascribe that delay to the State's Attorney. . . . The criterion in each case is whether

315

■■■■■■■■■■

the preliminary hearing and what reasons she may have had for expecting that she would not be indicted are not as explicitly set forth as in Bagato, but the fact of her desire for delay is just as clear.

The gist of defendant's argument appears to be that defendant sought delay in order to permit developments which she thought would be to her best interest and lead to a favorable disposition of her case; that these expectations were reasonable and were induced by the police; that they have not materialized, thus demonstrating that her requests for continuance were not an exercise of free choice on her part. We do not subscribe to this theory that the statute encompasses any such hindsight determination. Nor do we think that it contemplates any inquiry whatsoever into a defendant's motivation.[9] Release is afforded only if delay is not occasioned by the defendant and, wisely we think, the statute does not concern itself with the reasons therefor.

■ The issue is simply: was either of the delays in this case occasioned by the defendant? We believe the record shows that it was. The order of the Circuit Court will therefore be reversed.

### The Sufficiency of the Indictments.

The indictments charge that the defendant committed the offenses alleged (unlawful sale and possession of a narcotic drug) on January 15, 1964 at and

---

defendant's acts caused or contributed to the delay. In this case, where the delay was a necessary part of a plan in which defendant was an active participant, and whereby he would gain an advantage in his own case, there can be no question that the delay may properly be attributed to him.

[9] As was stated in People v. Reader, 26 Ill2d 210, 214, 186 NE2d 298, we can conceive of many reasons why a defendant would ask for a continuance even though it resulted in a waiver of his right under the statute.

316

within Cook County, Illinois. They contain no further description of time or place. If on this account these charges are fatally defective, we should consider it improper to remand the cause for the futility of trial, even though the point has not been raised in either the trial court or here. People v. Minto, 318 Ill 293, 296, 149 NE 241. We feel obliged, therefore, to examine the indictments as to their legal sufficiency, and particularly in the light of the recent decision in People v. Blanchett, 55 Ill App2d 141, 204 NE2d 173 (Fourth Dist., 1965).

 In Blanchett the court held that, on defendant's motion after a trial in which the defendant was found guilty of robbery, judgment should have been arrested because the information did not state the street address or other description of the exact place within the county at which the robbery was alleged to have occurred. The defendant's conviction was therefore reversed without regard to proof of guilt. From our study of the same sources of authority we reach the opposite result.

Through statutory and case-by-case development of the law by legislature and court, it sometimes happens that we consider ourselves presented with overlapping or inconsistent principles which are extremely difficult to construe. In such circumstances, we feel that a court can only try to stand off and view the entire juridical structure in an attempt to reconcile its decision with the overall design of constitution, statute and case law rather than with all of its separate parts.

In article II, section 9 of the constitution it is guaranteed to an accused that he shall have the right "to demand the nature and cause of the accusation and to have a copy thereof." It has been held countless times that an indictment sufficiently complies with this constitutional requirement when it informs

317

the accused of the offense with which he is charged so as to enable him to prepare his defense. People v. Moore, 368 Ill 455, 457, 114 NE2d 494; People v. Braun, 375 Ill 284, 287, 31 NE2d 287. In this regard the court in People v. Woodruff, 9 Ill2d 429, 440 137 NE2d 809, stated: "Niceties and strictness of pleadings are supported only where a defendant would be otherwise surprised on the trial or be unable to meet the charge or prepare his defense." See also People v. Hill, 17 Ill2d 112, 114, 160 NE2d 779; and People v. Nastasio, 30 Ill2d 51, 54, 195 NE2d 144.

 We then come upon one of the imprecise boundary lines in this field. An indictment must be specific enough to enable the defendant to prepare his defense, but that is also the basic rule for the allowing of bills of particulars. People v. Gerold, 265 Ill 448, 471, 107 NE 165. And it is only when the indictment is not sufficient to enable the defendant to prepare his defense that a bill of particulars may be ordered in the discretion of the court. People v. Bain, 359 Ill 455, 472, 195 NE 42; People v. Sims, 393 Ill 238, 241, 242, 66 NE2d 86. Yet an indictment which is insufficiently specific cannot be helped by a bill of particulars. People v. Flynn, 375 Ill 366, 371, 31 NE2d 591. Reconciliation of these principles is difficult, indeed.

Section 111-3 of the new Code of Criminal Procedure calls for many specific points to be covered in a charge which would then seem to contain sufficient information to enable a defendant to prepare his defense. Section 111-6, however, authorizes a bill of particulars only when the charge meets the requirements of section 111-3 and still fails in that specificity which would enable the defendant to prepare his defense.

It seems to us that accommodations are indicated all around, and most importantly, we believe, in the

interpretation of Section 111–3 which formed the basis for the Blanchett decision. That section, except for signature requirements, reads as follows:

§ 111–3. *Form of Charge.*

(a) A charge shall be in writing and allege the commission of an offense by:
(1) Stating the name of the offense;
(2) Citing the statutory provision alleged to have been violated;
(3) Setting forth the nature and elements of the offense charged;
(4) Stating the time and place of the offense as definitely as can be done; and
(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty.

Directing attention to subparagraph (a)(4) it clearly directs that the place of the offense, for example, should be stated "as definitely as can be done." As we read that clause it expresses a limit of capability of someone, not just an abstract concept of the most definite designation of place within the capability of anyone and everyone generally. The "someone" in the case of an indictment is the grand jury.[10] Now, in looking at the face of an indictment, how is a court to tell whether the place of the offense was stated as definitely as the grand jury was able to state it? Surely it is not contemplated that, at a hearing on the sufficiency of the indictment, testimony should be

---

[10] The Blanchett case could be distinguished on this point since it involved an information, presumably signed by the State's Attorney, and the State's Attorney conceded that he had more exact knowledge of the place of the offense than was set forth in the information. We do not, however, choose to differentiate the Blanchett case on so narrow a ground.

319

taken from the grand jurors to ascertain the extent of their knowledge on the subject, when the indictment was returned, or the reasons, if any, why they didn't furnish more definite information. If the place is described as a city, who can say that it might not have been possible for the grand jury to have ascertained the street? If the street is given, the same could be said about the building, and the room, and the location within the room, etc. Even after a trial it is sometimes impossible to know with certainty the exact place of the offense, and to require this sort of determination by a grand jury would involve it in tangential investigations far afield from its essential function.

Similarly, under subparagraph (5) of section 111–3, a defendant might move to dismiss his indictment on the ground that, although he was designated in the bill by a name which identified him with reasonable certainty, nevertheless, his real name was known to the grand jury and therefore should have been used. The statute says that if his name is known it shall be used, and only when it is not known may other identification be employed. How, then, would the court find out what had and had not been known to the grand jury?

These examples demonstrate to our satisfaction that, despite the word "shall" [11] which is used in section

---

[11] The word "shall" in a statute has not always been construed as mandatory:

People v. Throop, 359 Ill 354, 362, 194 NE 553 and People v. Kocielko, 404 Ill 54, 57, 58, 87 NE2d 778 as to the duty of the court to conduct a hearing on aggravation and mitigation.

People v. O'Hara, 332 Ill 436, 446, 163 NE 804, as to the duty of the State to furnish defendant with a list of witnesses.

See, also, Cooper v. Hinrichs, 10 Ill2d 269, 272, 140 NE2d 293, in which the court said:

The terms of the statute do not themselves indicate unequivocally whether the statute is mandatory or discretionary

111–3, a failure of compliance with some of its directives does not necessarily result in an indictment which is so defective as to subject it to dismissal. As a matter of fact there is nothing in the Code which indicates what action an indictment is subject to, simply because it does not measure up to all the provisions of section 111–3. On the other hand there is, we believe, indication in the Code that for that reason alone an indictment may not properly be made the object of a motion to dismiss or a motion in arrest of judgment.

■■ ■■ The Code establishes four categories of defects or insufficiencies or situations which render an indictment amenable to attack. First, are the kinds which are termed "formal defects." These are misjoinder, misspelling, surplusage, etc. By the provisions of section 111–5 an indictment which complies with section 111–3 shall not be dismissed because of formal defects.[12] Furthermore, the defects in such an indictment (the work product of the grand jury) may be cured by amendment on motion of the State's Attorney or defendant.[13]

Next there is the category consisting of indictments which comply with section 111–3 but, nevertheless, lack sufficient specificity to enable the defendant to prepare his defense. In the light of what we have said above, we consider this to be a degree of defect, even though it is an insufficiency which does not require the application of any remedy to the indictment itself. By the provisions of section 111–6 such miss-

---

in character. The word "shall" appearing therein does not have an exclusive, fixed or inviolate connotation, and has been construed as meaning both "must" and "may," depending upon the legislative intent.

[12] And presumably shall not be made the object of a motion in arrest of judgment.

[13] A complete list of formal defects is not set forth in the statute. It only describes them as "including" those enumerated. See People v. Hall, 55 Ill App2d 255, 204 NE2d 473.

ing information may also (by order of court on motion of the defendant) be supplied by the State's Attorney in the form of a Bill of Particulars.

Thus we find two specific references to section 111–3 in other sections of the Code, and both of them concern the procedures to be followed for the supplying of additional information or corrective measures when section 111–3 has been complied with.

Next we turn to section 114–1 (quoted above) which definitely lists all of the grounds (ten in number) on which the court may dismiss an indictment. Here, if it were so intended by the legislature, we would expect to find that an indictment might be dismissed simply for failure to comply with all the provisions of section 111–3. But such is not the case. Needless to say, it would have taken only a very simple piece of draftsmanship (by a committee as highly skilled in drafting statutory language as any we have ever known of) to include as a ground for dismissal that an indictment does not charge "an offense in accordance with section 111–3." As mentioned, the converse of this very language was used in sections 111–5 and 111–6.

Returning to section 114–1, eight of the ten grounds for dismissal (all but those numbered (6) and (8)) appear to apply to a third category of indictments subject to attack. These grounds must be advanced on motions to dismiss within a reasonable time after arraignment or they are waived. None of these grounds includes a failure to state "the time and place of the offense as definitely as can be done."

 We are left, then, with only two types of indictment defect or insufficiency which form the fourth and last category. These are grounds (6) and (8). They are not and cannot be waived by failure to employ them as a basis for motion to dismiss. They go to the very vitals of the charge.

322

The sixth ground is that the court in which the charge has been filed does not have jurisdiction. In this, of course, a statement of the place of the offense is essential. For example, an indictment filed in the Circuit Court of Cook County must show on its face that the offense charged took place in Cook County or that court would be without jurisdiction to entertain the case. For this purpose, however, the place need not be stated "as definitely as can be done," but must allege only the necessary jurisdictional fact of locale, namely, that the offense took place in Cook County.[14]

 In the ordinary case, an allegation as to the time of the offense would not present a question of jurisdiction. In the ordinary case, also, the State is not limited to the allegation of the indictment in proving the date of the offense. It is only necessary that the evidence show it to have taken place at a time prior to the indictment and not barred by the statute of limitations. People v. Rohde, 403 Ill 41, 85 NE2d 24; People v. Schmidt, 10 Ill2d 221, 228, 139 NE2d 726; People v. Evans, 24 Ill2d 215, 218, 181 NE2d 80. If the indictment discloses that a limitations question is present, section 114-1(a)(2), either alone or in conjunction with a Bill of Particulars,

---

[14] People v. Burke, 400 Ill 240, 79 NE2d 488, was a case of incest. It does not appear from the opinion that there had been a motion to quash the indictment, so presumably there had not been one. The Supreme Court stated at pages 242, 243:

There remains the question whether or not the indictment was faulty because it did not describe the address where the crime occurred. We are of the opinion that it was not. The indictment clearly stated that the act complained of occurred in the County of Cook, State of Illinois, on March 6, 1943. The act described was unlawful and the location at which it occurred was not an element of the crime to be charged and proved. . . . The rights of plaintiff in error were amply met by the indictment.

would be available to a defendant on a motion to dismiss. A Bill of Particulars in such a case would have the effect of limiting the State's proof to a date certain. Similarly, by Bill of Particulars the State may be limited to a certain hour or certain hours of the date alleged if that becomes important to the defendant because of an alibi defense, or otherwise.

Under these circumstances we do not read the jurisdictional sixth ground for dismissal as encompassing a failure to allege "the time and place of the offense as definitely as can be done."

 That leaves only one remaining ground of dismissal to be considered—the eighth, which is that "[t]he charge does not state an offense." Again, there is absent the qualifying phrase, "in accordance with section 111-3," which might easily have been added. We construe this eighth statutory ground of dismissal to be completely unfettered by technicalities. It refers to the kind of defect which is involved in due process and cannot be waived. Such a defective charge could be attacked at any time. People v. Minto, 318 Ill 293, 149 NE 241; People v. Clark, 256 Ill 14, 99 NE 866. Much of what we have said concerning the sixth ground for dismissal is also applicable here.

Section 116-2 of the Code sets forth the requirements for a successful motion in arrest of judgment. The only grounds are the same two as are embodied in the sixth and eighth grounds for dismissal.

Dating back to 1827 there was a statute in Illinois which directed that "[a]ll exceptions which go merely to the form of an indictment, shall be made before trial, and no motion in arrest of judgment, or writ of error, shall be sustained, for any matter not affecting the real merits of the offense charged in the indictment." Ill Rev Stats 1959, c 38, § 719. No specifications were set forth by which the courts were to be guided in deciding what were merely matters of form.

Comments were made on the subject, however, in many opinions, but, by the nature of criminal proceedings, until a recent date there was apparently no direct route for decision. When an indictment was quashed the order could not be appealed, and when it was not, the defendant would plead and thereby waive his exceptions to the form of the indictment. As an example of the treatment customarily given to the subject on review, see People v. Schmidt, 10 Ill2d 221, 139 NE2d 726, in which an indictment was held to support a conviction although the charge failed to specify the day and month of the offense. The court mentioned, however, that the defendant had "failed to take advantage in apt time of the defect in the indictment by motion to quash." (Page 227.) Examples of parallel comments relating to the place of the offense charged are found in People v. King, 50 Ill App2d 421, 428, 200 NE2d 411, and People v. Bremer, 57 Ill App2d 436, 206 NE2d 795 (1st Dist., 1965). Both of these opinions mentioned that the defendant had not moved to quash.

The only decision on this point of which we are aware is People v. Williams, 30 Ill2d 125, 196 NE2d 483. This case was reviewed on the recently authorized writ of error on behalf of the People after an order quashing the indictment for failure to state the street address of an attempted burglary. The order was affirmed, the ground being a part of the body of technical defects in form which had come to be recognized as reachable by motion to quash.

It is our opinion, however, that the sanction of all these judicial comments through the years and the holding in the Williams case have been rendered obsolete by the 1963 Code of Criminal Procedure. Section 719, referring vaguely to defects in form, was repealed as of January 1, 1964 and it was replaced with the workmanlike and very specific sections of the Code

which we have quoted above. All the grounds for the various lines of attack on an indictment are set forth in meticulous fashion in the Code and leave no doubt in our minds that they are intended to be exclusive.[15] There is no longer a general statutory category of "technical defects as to form" which must be raised in a motion to quash or dismiss, and we believe that, in the circumstances, none can be found at common law. If a claimed defect in the indictment (such as absence of street address) is not expressly authorized by the Code as a ground for a motion to dismiss, it is not available for that purpose.

Which is not to say that whatever information a defendant may need to prepare his defense won't be his for the asking. But it may come in a different form outside the indictment. The cumbersome reindictment procedure will not be required to cure this kind of defect or insufficiency. What additional information the defendant needs he may get from the State's Attorney, and he will be none the worse off for the difference in source. The constitution does not state that an accused must be furnished in the indictment itself with the nature and cause of the accusation against him. It provides only that he has a right to demand that information and receive a copy thereof. Under the new Code some of this information may be supplied through amendment of the indictment on motion of either party, and some of it may be supplied in the form of a Bill of Particulars. The grand jury's work will have been completed when it has performed its basic function in accordance with

[15] As mentioned earlier in this opinion, the only "open-end" category of insufficiencies is the "formal defects" covered by Section 111–5. We do not think that specific address or time are included in that section, but if we are wrong in this then that information may be supplied through amendment by the State's Attorney.

the statutory guidelines. We do not perceive any constitutional weakness in this legislative scheme.

Concern has been expressed in some of the cases (including Williams) over the need to furnish details in an indictment in order to prevent double jeopardy. We feel that this need not be a problem, because almost every indictment complying with the statute would be adequate to meet this requirement. If in a rare case it were not, then the defendant could introduce the record or parol evidence of his former prosecution. People v. Jankowski, 391 Ill 298, 302, 63 NE 2d 362; People v. Brady, 272 Ill 401, 409, 112 NE 126.

In reaching our conclusion in this case, section 111-6 has not been treated as mandatory insofar as it indicates that a Bill of Particulars should be available only when the indictment accords with all the provisions of section 111-3. We have forecast its broader use, as it is our opinion that in this instance there must be some comparatively minor exceptions if the major parts of the legislative whole are to remain in harmony, and inconsistency be minimized. In this way we have sought to delineate what appears to us to be the overall design which the legislature intended in enacting the new Code.

Conclusion.

The Circuit Court's order of dismissal for failure to place defendant on trial within the statutory period is appealable by the State, and is reversed. The cause is remanded for trial.

Reversed and remanded.

McCORMICK, P. J. and DRUCKER, J., concur.