BOARD OF EDUCATION OF CHENOA COMMUNITY UNIT SCHOOL DISTRICT No. 9 *et al.*, Plaintiffs-Appellants, v. REGIONAL BOARD OF SCHOOL TRUSTEES OF McLEAN AND De WITT COUNTIES *et al.*, Defendants-Appellees.

Fourth District   No. 4—94—0210

Opinion filed September 23, 1994.

Michael J. Tibbs, of Miller, Hall & Triggs, of Peoria, for appellants.

Charles G. Reynard, State's Attorney, and Martin L. O'Connor, of Fleming, Messman & O'Connor, both of Bloomington (Eric T. Ruud, Assistant State's Attorney, of counsel), for appellees.

PRESIDING JUSTICE MCCULLOUGH delivered the opinion of the court:

Defendants Charles and Nancy Kahle, together with their $4^{1}/_{2}$-year-old son, are the only residents on a 160-acre farm owned by a family partnership in which all the Kahle family defendants have an interest. The Kahle defendants filed a petition to detach the 160 acres from the Chenoa Community Unit School District No. 9 (Chenoa district) and annex it to the bordering Lexington Community Unit School District No. 7 (Lexington district). Following a hearing on the petition, the Regional Board of School Trustees of McLean and De Witt Counties (Regional Board) granted the petition and the circuit court, in administrative review, affirmed. Plaintiff Board of Education of Chenoa Community Unit School District No. 9 appeals, alleging the Regional Board was precluded from granting the petition by section 7—4(e) of the School Code (105 ILCS 5/7—4(e) (West 1992)), and the decision was against the manifest weight of the evidence. For the reasons which follow, we reverse.

At the hearing on the petition, the superintendent of Chenoa district testified the district included a portion, but not all, of four separate townships. Based on the 1990 census figures, the superintendent stated that even if no persons resided on those portions of the townships which were not within Chenoa district, the maximum population was 3,406 and there had been no significant increase since the 1990 census. He estimated that based on his review of census data, mailing lists, and voter registration rolls, the approximate population of Chenoa district was 3,200. The total equalized assessed valuation of the district was over $23 million.

Section 7—4 of the School Code (105 ILCS 5/7—4 (West 1992)) provides:

"Requirements for granting petitions. No petition shall be granted under Sections 7—1 or 7—2 of this Act:

\*\*\*

(b) Unless after granting the petition any community unit district, community consolidated district, elementary district or high school district created shall have a population of at least

2,000 and an equalized assessed valuation of at least $6,000,000 based upon the last value as equalized by the Department of Revenue as of the date of filing of the petition.

\* \* \*

(e) If after the change of boundaries any district has less population or equalized assessed valuation than required for the creation of a district of like type."

Chenoa district is a community unit school district maintaining grades 1 through 12. The creation of community unit school districts is governed by section 11A—2 of the School Code, which provides:

"Any contiguous and compact territory of at least $12,000,000 equalized assessed valuation and having a population of not less than 4,000 and not more than 500,000, no part of which is included within any community unit school district, or other unit district, may be organized into a community unit school district as provided in this Article \*\*\*." 105 ILCS 5/11A—2 (West 1992).

Plaintiff argues that the plain and ordinary meaning of section 7—4(e) of the School Code requires denial of a detachment petition when the population of the detaching district is below that which is required for creation of a district of like type, in this case a community unit school district with a minimum population requirement of 4,000, pursuant to section 11A—2 of the School Code. Plaintiff contends that the establishment of minimum standards for population size and assessed valuation reflects an intent by the General Assembly to prohibit boundary changes which would impair the viability of smaller districts. Therefore, since Chenoa district is a community unit district with a population of less than 4,000, no petitions for detachment could be granted and the Regional Board erred in approving detachment of the Kahle family property.

Defendants contend that section 7—4(e) of the School Code does not apply to existing districts which do not meet the minimum population quota at the time a detachment petition is brought. In support of this view they cite *School Directors of School District No. 82 v. County Board of School Trustees* (1957), 15 Ill. App. 2d 115, 145 N.E.2d 285, and *Davis v. Regional Board of School Trustees of Madison County, Worden Unit School District No. 16* (1987), 155 Ill. App. 3d 185, 507 N.E.2d 1352, both of which are distinguishable on their facts.

In *School Directors*, two tracts of land representing 10% of the assessed valuation of the district were sought to be detached from a common school district maintaining grades one through eight with a population of 300 and a one-room school and annexed to a larger district with a three-room school. *School Directors* did not involve a detachment from a unit district. The court in *School Directors* noted

that different types of school districts were provided for under the School Code, including those with a maximum population of under 1,000 and found:

"Article 4B [the precursor to section 7—4 of the School Code] indicates an ultimate goal for school districts of 2,000 population. *** We conclude that the legislature intended to encourage the development of districts of 2,000 population, and that once that figure has been reached, changes should not be made to reduce them again below that figure and that this is the real purpose of sub-par. (e).

\* \* \*

*** [I]t is our conclusion that a small district which presently does not have and never has had a population of 2,000 is not included in the population requirement found in Section 4B—3(e)." *School Directors*, 15 Ill. App. 2d at 123-25, 145 N.E.2d at 290.

In *Davis* the court determined that the population and assessment requirements of section 7—4(e) of the School Code did not apply to a detachment district which was an "old type unit" created prior to the enactment of the School Code. In the absence of evidence of population and assessment requirements for such old type units, the court found there was "nothing in the School Code or case law to support the claim that they must be treated for detachment purposes under the same standards applicable to 'community unit districts.' " *Davis*, 155 Ill. App. 3d at 193, 507 N.E.2d at 1357.

As stated before, Chenoa district is neither an "old type" district as in *Davis*, nor a common school district with a population under 1,000, as in *School Directors*. As an existing community unit district with a population of approximately 3,400, the approval of any petition for detachment is constrained by the population and assessment requirements for creation of a district of "like type," *i.e.*, a community unit district. Defendants assert that if plaintiff's argument is followed, detachment of territory in any community unit district of a size similar to Chenoa's would be impossible and it is unlikely the legislature intended section 7—4(e) of the School Code to freeze small districts to their present size and configuration. They contend it is more likely the legislature intended only to prohibit the formation of new districts lacking the size and valuation specified by section 11A—2 of the School Code.

Defendants fail to account for any distinction between subsections (b) and (e) of section 7—4 of the School Code (105 ILCS 5/7—4(b), (e) (West 1992)). Prior to its amendment in 1955 (69th Ill. Gen. Assem., Senate Bill 470, 1955 Sess. (1955 Ill. Laws 1318-19)), the former version of section 7—4 of the School Code did not include subsection (e). (See Ill. Rev. Stat. 1953, ch. 122, par. 4B—3.) Subsection (b) has

been construed as applying only to the creation of new districts and having no application to boundary changes of existing districts. (*Kinney v. County Board of School Trustees* (1955), 7 Ill. App. 2d 286, 294, 129 N.E.2d 292, 296; *Stehl v. County Board of School Trustees* (1955), 7 Ill. App. 2d 257, 260-61, 129 N.E.2d 297, 299.) If, as defendants contend, subsection (e) also applies only to the creation of new districts and not those districts already in existence, the 1955 amendment adding subsection (e) would have been a meaningless act. Courts will avoid construction of a statute which would render any word or phrase meaningless or superfluous. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.) Section 7—4(e) of the School Code expressly refers to a "change of boundaries" pursuant to petitions filed under section 7—1 or 7—2 of the School Code (see 105 ILCS 5/7—1, 7—2 (West 1992)), both of which are in turn expressly applicable to boundary changes in existing school districts.

Of interest is the statement by the *Stehl* court implicitly acknowledging that the newly enacted subsection (e) applied to existing districts:

"It is interesting to note that Article 4B—3 of the School Code was amended on July 9, 1955, by adding thereto subpar. (e), so that as now amended, section 4B—3 provides that no petition shall be granted under section 4B—1 or 4B—2 of the School Code, if, after the change of boundaries any district has less population or assessed valuation than required for the creation of a district of like type. (Smith-Hurd Ill. Anno. St. 1955, ch. 122, sec. 4B—3.) Prior to this amendment, the statute applied to the creation of a new district ***." (*Stehl*, 7 Ill. App. 2d at 261-62, 129 N.E.2d at 299.)

The *School Directors* court's reference to this statement does not discount its importance in this case involving a unit district.

■ The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature by giving the language of the statute its plain and ordinary meaning. (*Thomas v. Greer* (1991), 143 Ill. 2d 271, 278, 573 N.E.2d 814, 816.) The plain meaning of section 7—4(e) of the School Code is that a prerequisite for approval of a change of boundaries, such as a petition for detachment of territory from an existing community unit school district, requires compliance with the minimum population and assessed valuation standards of section 11A—2 of the School Code.

It is not within the purview of this court to pass on the wisdom of a legislative enactment nor restrict the plain meaning of an unambiguous statute. "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Western National Bank v.*

Village of Kildeer (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169, 173-74.

■ Defendants' contention to the contrary, it is not evident that smaller districts will be "frozen" in their present configurations or that the future amalgamation of larger districts will be prevented. The School Code has been and will be the subject of legislative amendment. Section 11A—2 of the School Code (105 ILCS 5/11A—2 (West 1992)) allows two or more contiguous community unit school districts to be organized into a single unit district and section 11A—2 of the School Code (105 ILCS 5/11A—2 (West 1992)) allows one or more contiguous community unit school districts plus any contiguous and compact territory to be organized into a unit district, pursuant to petition and the requirements of section 11A—3 of the School Code (105 ILCS 5/11A—3 (West 1992)).

We conclude that since the population of Chenoa district was less than the 4,000 required for creation of a community unit school district, as a matter of law the petition failed to meet the statutory prerequisites to permit a petition for detachment to be granted. Accordingly, the order of the circuit court affirming the action of the Regional Board must be reversed.

Although not necessary to the scope of review in light of our disposition, we note that had the population of Chenoa district met the statutory requirements of the School Code, based on the "benefit-detriment test" formulated in *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 356, 586 N.E.2d 1273, 1277, the evidence presented by the Kahle family was otherwise sufficient to allow the Regional Board to grant the petition.

The judgment of the circuit court in administrative review is hereby reversed.

Reversed.

LUND and GREEN, JJ., concur.